## WHITWELL & HOOVER *vs.* EMORY.

In the record of a deed, the surname of one of the subscribing witnesses was apparently a *fac simile* of the original upon the deed, and so written as not to be intelligible without explanatory evidence. *Held* not to invalidate the record.

The practice of the Courts of this State, authorizing the files and journal entries to be used in place of a record, does not dispense with any of the essential requisites and evidences of a judgment. An order for final judgment must not only ascertain the determination of the Court upon the matter submitted, but the parties in favor of and against whom it operates.

Although under the statutes, Courts may amend clerical errors at any time, yet, after the term, that which enters into the consideration of the Court, and

forms a part of the judgment, cannot be changed, nor can Courts at a subsequent term, under the form of an amendment, render a judgment.

Case reserved from Calhoun Circuit.

This was an action of ejectment tried at the Calhoun Circuit, June Term, 1851, to recover certain premises in said county. The plaintiffs in support of their claim to the premises produced in evidence on the trial: 1st, three exemplifications of patents granting the lands in question to Reuben Abbott; 2d, the record of a warranty deed from said Abbott and his wife to Samuel W. Abbott, dated Feb. 25, 1841, recorded April 28, 1842; 3d, the record of a deed from said Samuel W. Abbott and his wife to Martha Matthews; and 4th, the record of a deed from Martha Matthews and Sheldon Matthews to the plaintiffs. To the admission of the record of the deed from Samuel W. Abbott and wife to Martha Matthews, objection was made on the ground that the surname of one of the subscribing witnesses was apparently a *fac simile* of the original, and could not be read without explanatory evidence. To rebut the plaintiffs' case, the defendant attempted to show title in himself, acquired under a judgment and execution against Reuben Abbott, the common source. To prove the judgment, he introduced a journal entry of the same Court, which entry appears to have been originally in these words:

"Dec. 6, 1841,
Reuben Emory and Harriet Emory,
*vs.*
Reuben Abbott.

On hearing counsel in this cause, on motion of George Woodruff, plaintiffs' attorney, judgment for plaintiffs on demurrer, and that it be referred to the clerk to compute the amount due on the bond mentioned in the plaintiffs' declaration, and the clerk having computed the amount due on said bond at $800, the penalty thereof to be discharged on the payment of six hundred and twenty-four dollars and eleven cents and costs to be taxed."

By virtue of this entry and the proceedings thereunder, defendant claimed title to the lands in question. This entry remained on the journal without amendment or any steps being taken respecting it, until after the commencement of this suit and up to the day of trial, June 19, 1851, when upon the *ex-parte* application of the defendant herein, an order was made for the amendment of the foregoing entry, by the insertion between the words " at" and " $800" of the following words: " *Six hundred and twenty-four dollars and eleven cents, ordered final judgment for.*" To the admission of the entry thus made the plaintiffs' counsel objected, but the same was received in evidence subject to the objection.

*O. Hawkins,* for plaintiffs.

1. The statute provides that if there are two witnesses to a deed, it is sufficient. The statute does not make the title depend upon the ability of the Register to read the names of the witnesses. Were this the case, any misspelling by the Register of Deeds would defeat the sale, or his inability to read or even write so that his writing could be read, would destroy the effect of the deed itself.

There was no judgment rendered in the case of Emory & Emory *vs.* Abbot, and nothing to base the issuing of the execution upon. (1 *Doug.* 602; 3 *McLean R.,* 198.)

The Court had no power to alter the record so as to make a judgment of what was not a judgment in the case after the term in which it was entered. (6 *How. R.,* 32; 3 *McLean R.,* 487; 3 *Wheat. R.* 591.)

*G. Woodruff,* for defendant:

1. The record produced by the plaintiffs, exhibiting a *fac simile,* in lieu of the legible name of one of the witnesses, was inadmissable under the statute requiring two witnesses to every deed.

2. The entry of the judgment as it originally stood was sufficient in substance, though not altogether above exception in point of form. The action was debt on a money bond.

The judgment for the plaintiff on demurrer was final in the first instance, and of course for the penalty, which is itself sufficiently indicated, and had it not been, the *Oyer* would have helped it out. (*Graham Pr.*, 2d *Ed.* 667, 761, 787; 3 *Cow.* 39, *and note.*)

Nor was the amendment asked or granted at too late an hour. See Balch *vs.* Shaw, Law Reporter, June, 1851.

By the Court, MARTIN, J.

We cannot perceive the force of the objection to the admission of the record of the deed from Samuel W. Abbott, and Martha, his wife, to Martha Matthews, that the surname of one of the subscribing witnesses was apparently a *fac simile* of the original, and could not be read without explanatory evidence. Nor can we conceive what explanatory evidence could be offered to decipher this writing. The case informs us that the record of the surname of one of the witnesses was so written as not to be intelligible, and was apparently a *fac simile* of the original upon the deed. Parties who procure the record of deeds cannot be held responsible for the capacity of the Register to read and write. The same reasons which would debar the plaintiffs of this evidence would operate to invalidate the record, and of consequence the grant in case of a subsequent purchase. To so illiberal a rule we cannot subscribe. The grantor has discharged his duty by procuring the record of the deed, and the Register had done all his by recording it. It was no lack of duty on his part, which is the ground of this objection, but a too literal observance of it. Were the deed in its body so unintelligible as to convey to the Register no information of its contents, a record which would be equally unintelligible, or a *fac simile*, would hardly be considered as a compliance with the law so as to affect the rights of others. But not so in the case of a single word, which could have thrown no obscurity over the nature and extent of the conveyance, or

the description of the property conveyed, so as to mislead a. person investigating the title.

The evidence offered by the plaintiffs was properly admitted.

To the admission of the journal entry of Dec. 6, 1841, and the amendment made June 19, 1851, the plaintiffs' counsel objected, for reasons appearing in the statement of the case,. but the same was received in evidence, subject to the objection.

Before this amendment was made there was clearly no final judgment entered in the cause. The entry showed nothing but the fact of interlocutory judgment, the order of reference to the clerk and his action. It is true that it bears upon its face evidence of an omission of something, but what was omitted could only have been inferentially determined. From the subsequent action of the Court, it would seem that the omission was thought to embrace the assessment of the amount. due upon the bond, and that which it was conceived went to constitute a judgment, viz : the words " *ordered final judgment for*," and without which there was no evidence of an adjudication by the Court.

A judgment is the final consideration and determination of a Court of competent jurisdiction upon the matters submitted to it, and it is only evinced by a record, or that which is by law—as the files and journal entries of this State—substituted in its stead. An order for a judgment is not the judgment, nor does the entry of such order partake of the nature and qualities of a judgment record. This must clearly ascertain not only the determination of the Court upon the subject submitted, but the parties in favor of and against whom it operates.. Such is held to be the rule even in cases of judgments in Justices' Courts, and certainly it may not be relaxed in Courts of Record. A reference to the conclusion of a judgment record will clearly indicate what we mean, and our practice, which authorizes the files and journal entries to be used in

place of a record, does not dispense with any of the essential requisites and evidences of a judgment. Hence the almost uniform practice has been to require the journal entries of proceedings had subsequent to the joinder of issue, to be as full as the postea of a judgment record, and as a matter of fact to a very great extent the language itself has been adopted. The entry with the amendment, then, comes far short of evidence of a judgment, but is rather in the form and nature of an interlocutory order, or a common rule which by some accident had found its way into the journal of the Court.

But the amendment was void, because without the jurisdiction of the Court. At the common law, while the proceedings are in paper, an amendment can be allowed, or a judgment could be set aside before the adjournment of the term at which it was rendered; but at a subsequent term the Court had no power to change the record of a previous term. By various statutes, both in England and this country, power is given to Courts to amend in many cases, which they could not exercise at common law. Under our statute a Court may at any time amend clerical errors, but that which enters into the consideration of the Court, and constitutes a part of the judgment, cannot be changed after the term. See 3 McLean, 486. Much less has a Court power under the form of an amendment to render a judgment.

Before the error in this cause could have been corrected, were it susceptible of correction by amendment, we apprehend that it was necessary that the parties to be affected by it should have been cited before the Court. Especially should this be done where the matter had slept *ten* years. To permit any other course might work irreparable mischief to parties wholly unconscious of their situation, and jeopard rights fairly and honestly acquired. Such practice is in accordance with all the analogies of the law, and we can see no good reason why it should not be pursued.

Before a judgment could be perfected in the cause, it was

certainly necessary that such course should be pursued, and the parties had afforded to them an opportunity to be heard.

Certified accordingly.