### Reuben Emery v. Samuel W. Whitwell and Another.

Ejectment. Plaintiff claimed the premises under an execution sale. To prove a judgment on which execution issued, plaintiff gave in evidence the following journal entry entitled in the cause: "On hearing counsel in this cause, ordered, on motion of plff's. att'y, judgment for plffs. on demurrer, and that it be referred to the clerk to compute the amount due on the bond mentioned in plffs.' declaration; and the clerk having computed the amount due by the condition of said bond at $800, the penalty thereof, to be discharged on the payment of $624.11, with costs to be taxed." He also offered in evidence the execution issued for $800 debt, with endorsement to collect $624.11 and costs, the files in the case, showing declaration on a money bond in the penalty of $800, plea thereto, demurrer to the plea, and joinder. Also writ of error brought by defendant, in the same case—the return thereto giving a transcript of what purports to be a formal judgment record, and the proceedings in the Supreme Court thereon, where judgment was affirmed. The circuit court rejected all this evidence.—*Held*, erroneous.

### By MANNING J.

By the practice and statutes of this state, no formal judgment record need be made up unless required by one of the parties, but the judgment is evidenced by the

*See *Brown v. Lapham*, 3 *Cush.* 557.

files and journal entries. Admitting the journal entry in this case to be defective, the transcript sent up in return to the writ of error, showing a formal judgment record signed by the clerk and judge, is evidence both of such record and of the judgment of the circuit court.

## By CHRISTIANCY J.

Where the files in the case clearly show that judgment for a definite sum should have been entered, and was intended by the court to be entered, but the entry actually made was defective, it is entirely competent to amend the record to what it should have been, at any time thereafter.

But in such case no actual amendment need be made; but the record will be treated as amended, or rather as though no such error appeared.

A record, like other writings, must always be subject to construction, and is, in fact, what its fair construction makes it. The question of amendment in such a case is, therefore, practically one of construction, and must arise whenever and wherever the record is brought in question.

Notice of application to amend the record is not necessary in such case, because the effect of the record is not changed by it, and no one's rights are affected. Notice is only necessary where the nature of the error and the appropriate amendment depend on matters not apparent on the face of the record, but shown *aliunde*.

## By CAMPBELL J.

Where no question can arise as what were the rights of the plaintiff on the record itself, and where it would not have been in the power of the court to render a different decision without error, an omission to state that right, or to render that judgment properly on the record, can be regarded as nothing but a clerical omission; and is not only amendable of course, at any time, but, in reading the record, it should be considered as supplied, whether actually corrected or not.

The whole record should be read, when brought up collaterally, precisely as if the amendments due as a matter of right had been actually made.

As either the record in the court below, or that sent up in return to the writ of error, shows the judgment that should have been entered, and the execution is correct in accordance with that, the execution title should be sustained.

## By MARTIN Ch. J. dissenting.

The journal entry in question shows that the court intended to enter, not a final, but an interlocutory judgment merely, and this court has no power to transform it into a final judgment.

A clerical error in entering judgment may be amended at any time. But where the record fails to show that a judgment was intended to be entered, though it clearly appears that it might have been, this can not be regarded as a clerical mistake in the entry of a judgment, but as want of evidence of judicial action.

The return of the clerk to the writ of error is to be regarded as merely the formal return of the clerk; in a form which he supposed proper, and can not be used as evidence of a judgment in the same court in which record should be, if one was ever rendered, when the record itself is not shown to be lost or destroyed.

## Error to Calhoun Circuit.

Defendants in error brought ejectment in the court below, claiming title in fee to the premises in question,

On the trial (June 8th, 1858) before the court without a jury, they introduced in evidence a patent of the land from the United States to Reuben Abbott, a deed · from Reuben to Samuel W. Abbott, dated February 25th, 1841, a chain of conveyances from the latter to themselves, and possession by defendant at the commencement ·of suit; and rested.

Defendant, to support the issue on his part, then presented the journal of said circuit court, containing the following entry:

"*Reuben Emery and Harriet L. Emery v. Reuben Abbott.*

"Dec. 6th, 1841. — On hearing counsel in this cause, *Ordered*, on motion of George Woodruff, plffs.' att'y, judgment for plffs. on demurrer, and that it be referred to the clerk to compute the amount due on the bond mentioned in plffs.' declaration, and the clerk having computed the amount due by the condition of said bond at $800, the penalty thereof, to be discharged on the payment of six hundred twenty - four dollars and eleven cents, with costs to be taxed ($624.11)."

At the same time of presenting said journal, defendants submitted a motion entered in the special motion book as follows:

"*Reuben Emery and Harriet L. Emery v. Reuben Abbott.*

"The surviving plaintiff in this cause, Reuben Emery, by George Woodruff, his attorney, comes and moves the court that the entry of judgment in said cause, made in the journal of the court on the 6th day of December, A.D. 1841, be amended by the files and other entries in the cause so as to exhibit such a judgment as ought to have been rendered in said cause, *nunc pro tunc*, and that such entry may stand as follows: 'In this cause, the court now here having heard the arguments of counsel of the respective parties, upon the demurrer joined therein, and

considered the same, do adjudge that the plea of the said defendant is not sufficient in law to bar the said plaintiff's action: And it is therefore ordered, adjudged, and considered that the said plaintiffs do recover against the said defendant their debt aforesaid to eight hundred dollars, the penalty of the bond set forth in their declaration, with six cents damages, and costs to be taxed.' Which motion will be founded upon the files and entries in said cause, or upon authenticated copies thereof. Dated Oct. 27th, 1857."

The court declined to grant the motion, and defendant excepted.

Defendant then offered in evidence the journal entry above given, and also the files and entries in the cause entitled therein, showing, That the action was upon a money bond dated July 28th, 1838, given by said Reuben Abbott to the plaintiff Harriet, then Harriet L. Rossiter, and since married to the other plaintiff, in the penal sum of $800, conditioned for the payment of $100, September 1st, 1838, and $700 on July 28th, 1840, with interest: That declaration was filed therein November 14th, 1840, in the ordinary form in debt, and defendant pleaded thereto *nil debet:* That plaintiff demurred to said plea, and defendant thereupon filed an amended plea, setting forth that said Harriet, at the time of the giving of said bond, was administratrix on the estate of Daniel Rossiter, and that said bond was due to said estate, and not to said Harriet, except in her official capacity as such administratrix. That plaintiff also demurred to this plea, and defendant joined in demurrer.

Defendant also offered in evidence a transcript of a judgment of the Supreme Court, from which it appears that on the 16th day of June, 1842, said Reuben Abbott sued out of said court a writ of error directed to said circuit court, commanding the return of the proceedings in said cause; to which writ return was made, which, after reciting the pleadings and proceedings therein, set forth judgment as follows:

EMERY *v.* WHITWELL.

"And now, at this day, to wit, on the day and year and in the term of the said court first aforesaid, and before the judges aforesaid, at the court house in the village of Marshall, came the said parties by their attorneys aforesaid, and all and singular the premises aforesaid having been seen by the court now here, and fully understood, and mature deliberation being thereupon had, it seemeth to the said court now here, that the plea of the said defendant, and the matters therein contained, are not sufficient in law to bar and preclude the said plaintiffs from having and maintaining their aforesaid action thereof against him, the said defendant, and therefore the said plaintiffs ought to recover their damages; whereupon, on motion of George Woodruff, attorney for plaintiffs, it is referred to the clerk to compute the amount due upon the bond mentioned in the plaintiffs' declaration, and the clerk having computed the amount due by the conditions of said bond at eight hundred dollars, the penalty thereof to be discharged on the payment of six hundred and twenty-four dollars and eleven cents; and on further motion of said plaintiffs, by their attorney aforesaid, final judgment is rendered for said sum, with costs of suit. Therefore it is considered that the said Reuben Emery and Harriet L. Emery do recover against the said Reuben Abbott the sum of six hundred and twenty-four dollars and eleven cents for their said debt, and also twenty-six dollars and ninety-six cents for their damages, which they have sustained as well on occasion of the detaining of said debt, as for costs taxed and charges by them about this said suit, in this behalf expended, by the said court now here adjudged to the said plaintiffs, with their assent, which said debt and damages amounts in the whole to six hundred and fifty-one dollars and seven cents; and the said defendant in mercy, &c.

" Judgment rendered December 6th, 1841."

That error was assigned on said writ of error as follows:

"The plff. in error, by Gibbs and Bradley, his attor-

neys, comes and says, that in the record and proceedings aforesaid, and also in the giving the judgment aforesaid, there is a manifest error, in this, to wit: that by the record it appears' that the judgment aforesaid, in form aforesaid, was given against the said Reuben Abbott, whereas by the law of the land the said judgment should have been in favor of the said Reuben Abbott, and no judgment upon said record could legally have been had against him; and the said plaintiff in error prays that the judgment aforesaid . may be reversed, annulled, and held for nothing."

That on the 12th September, 1842, the following judgment was entered in said cause in the Supreme Court:

" On hearing of counsel in this cause, on the return to the writ of error heretofore issued in said cause, and mature deliberation being thereupon had, it is ordered, on motion of Mr. Pratt, of counsel for defts. in error, that the judgment below be affirmed, with ten per centum damages, and double costs to be taxed. Judgment of court below $651.07 ; dgs. at ten per centum, $49.94 ; amt. $701.01. It is therefore considered and adjudged by the court that the defendants in error do recover of the plaintiff in error the sum of seven hundred and one dollars and one cent, with double costs to be taxed."

Defendant also offered in evidence the docket entries in said cause in the circuit court, noting the entry of judgment therein, the issue and return of execution, &c. Also the execution, issued December 8th, 1841, commanding the collection of the debt of .$800, and $26.96 costs, with endorsement thereon directing the sheriff to collect $651.07, and interest from December 6th, 1841. Also an endorsement upon such execution, signed by Loren Maynard, as sheriff of Calhoun county, showing a levy upon the premises in question December 9th, 1841 ; and a return upon the same that said premises were sold by Charles Dickey, then sheriff of said county, to Reuben Emery De-

EMERY *v.* WHITWELL.

cember 20th, 1845, for $861.87. Also the sheriff's certificate of the said sale, and the record of the sheriff's deed given thereupon to said Reuben Emery. Also notice given of said levy in writing to said Reuben Abbott, by the sheriff, at the time of making the same, and that said Reuben Abbott was then in possession of the premises.

Defendants also offered to prove that said Maynard and Dickey were respectively sheriffs of said county at the time of · said action by each. Also that the deed from Reuben to Samuel W. Abbott was given without consideration, and for the purpose of preventing the premises being taken to satisfy any judgment that might be rendered in said cause. Also that plaintiffs were notified, prior to their purchase of said land, that defendant had a lien upon the same by virtue of said levy.

But to each of said offers of evidence by defendant the plaintiffs objected, and the court sustained the objections, and rendered judgment in favor of plaintiffs for the recovery of the premises.

Defendant removed the cause to this court, for review on exceptions to the rulings of the court.*

---

* This cause was once before in the Supreme Court on reservation by the circuit court, and will be found reported in 3 *Mich.* 84. On the opinion of this court being certified back, judgment was entered in the circuit court in favor of plaintiffs, in accordance with that opinion. A new trial was afterwards granted, on which the proceedings above recited took place. On the case being now called for hearing, Mr. Blair raised the question whether this court would hear a re-argument upon the same point directly passed upon by the late bench in this very cause. He contended that the case now presented was substantially the same, in every particular, with the one presented on the reservation. Plaintiff in error claimed that, by giving in evidence on this trial the files in the cause, he has added to the former showing, and has in fact shown that such proceedings had taken place that plaintiffs in the original suit were entitled to final judgment at the time they claim judgment was attempted to be entered. But it will be seen by the report in 3 *Mich.* that the proceedings down to that time were assumed, by counsel and the court, to have been correct — that no question was made as to there having been a proper declaration, a plea, and a demurrer which was sustained; but assuming these proceedings to have been had, the question passed upon was, What was the effect of the journal entry? It can therefore make no difference here that defendant has proved those matters here which, on the former occasion, were assumed to exist. As to the writ of error and return thereto, these can not make a judgment if none existed before.

The court took the matter under advisement, and, on a subsequent day, stated that the majority considered this case as differing in important particulars from that before presented, and the argument proceeded.

EMERY v. WHITWELL.

---

*G. Woodruff*, and *S. T. Douglass*, for plaintiff in error:

1. There is no peculiar sanctity in a judicial record which requires that it should be construed upon any different principles from any other writing.

2. All parts of a record should be construed together, and with reference to the jurisdiction and the known and established practice and course of proceeding of the court. — 1 *Lou. An. R.* 92.

3. And whenever it appears, with reasonable certainty, from the whole record, so construed, that some order or judgment was actually made in the cause, or some proceeding had, which either is not entered at all, or is erroneously entered, of record, through the misprison of the clerk, or even of an attorney of the court, which is essential to the validity of the subsequent proceedings, — the omission will be supplied, or the erroneous entry corrected by amendment; or, if the record comes in question collaterally, it will be treated as if amended.

4. And the amendment will be made upon comparatively slight evidence where the omission or defect is in respect to some judgment, order, or decree, to which the party claiming the benefit of it was entitled, as a matter of course and of right, according to the established practice of the court. — 6 *Ired.* 425; 4 *Dev.* 295; 7 *Cush.* 282; 5 *Ala.* 28; 16 *How.* 577; 19 *Ga.* 300; 22 *Ohio*, 11; 2 *Wall. Jr.* 569.

5. Especially where there has been acquiescence by the party entitled to avail himself of the defect, or subsequent proceedings taken by him in the cause, upon the assumption that no such defect existed. — 16 *How.* 579; 19 *Ga.* 288; 3 *Watts*, 87; 19 *Ohio*, 67; 2 *Wall. Jr.* 569; 10 *Ired.* 144.

6. Or where the amendment is necessary to support rights acquired, in good faith, by proceedings founded upon the judgment, order, or decree amended. — 3 *Watts*, 87; 4 *Dev.* 295; 8 *Ired.* 70; 1 *Pick.* 352; 16 *How.* 571; 19 *Ohio*, 67; 2 *Pa. St.* 338; 2 *Wall. Jr.* 569; 19 *Ga.* 300.

7. Any error or defect in a record, which occurs through the act or omission of the clerk of the court, in entering or failing to enter of record its judgments or proceedings, and is not an error in the express judgment pronounced by the court in the exercise of its judicial discretion, is a mere *clerical error*, and *amendable*, no matter in how important a part of the record it may be. And where the error or defect is in respect to the entry of some judgment, order, decree, or proceeding, to which one of the parties in the cause was of right entitled as matter of course, according to law and the established practice of the court, it will always be *presumed* to have occurred through the misprison of the clerk, and will be amendable if from other parts of the record it can be ascertained, with reasonable certainty, what judgment, order, or decree, &c., the party was entitled to. — 21 *Law Rep.* 680; 3 *Watts*, 87; 4 *Dev.* 295; 7 *Cush.* 282; 8 *Fos.* 473; 8 *Ired.* 70; 5 *Ala.* 28; 6 *How. Miss.* 93; 1 *Blackf.* 132; *Bus. Law*, 382; 8 *Ala.* 252; 16 *How.* 571; 11 *S. & R.* 357; 4 *Leigh*, 321, *note*; 9 *Ala.* 335; 24 *Miss.* 188; 19 *Ohio*, 67; 4 *Wend.* 463; 22 *Ohio*, 11; 8 *Ala.* 297; 9 *Ala.* 337; 8 *Blackf.* 100; 1 *Green* (*N. J.*), 195; 3 *S. & M.* 248; 7 *Gill. & J.* 73; 5 *Ala.* 223; 4 *Leigh*, 309; 7 *How. Miss.* 599; 18 *Johns.* 502; 1 *Cow.* 189; 2 *Ham.* 31; 4 *H. & McH.* 498; 19 *Johns.* 244; 2 *Hill* (*So. C.*), 475; 5 *Rand.* 546; 6 *Pick.* 512; 2 *Pa. St.* 335, 338; 2 *Wall. Jr.* 569; 4 *Eng.* 375; 11 *Humph.* 192; 6 *Humph.* 281; 10 *Me.* 281.

8. *Clerical errors* may be amended at any time. It is not necessary that the amendment should be made during the term at which the judgment is rendered. — 4 *Mod.* 371; 2 *Gilm.* 437; 3 *Ala.* 607; 1 *Scam.* 122; 6 *Ired.* 425; 8 *Fos.* 473; 6 *Cush.* 354; 1 *Pick.* 351; 7 *Cush.* 282; 24 *Ala.* 281; 4 *Conn.* 71; 5 *Ired.* 12; *Bus. Law*, 382; 4 *M. & S.* 93; 8 *Ala.* 252; 16 *How.* 571; 2 *Wall. Jr.* 570; 9 *Ala.* 335; 12 *Ala.* 363; 5 *Ired.* 204; 1 *Green* (*N. J.*), 195; 3 *S. & M.* 248; 2 *Ala.* 29; 4 *Leigh*, 308; 18 *Johns.* 502; 1 *Cow.* 189; 2 *Ham.* 31; 4 *H. & McH.* 498; 19 *Johns.* 244; 2 *Hill* (*So. C.*), 475;

4 *Rand.* 546; 9 *Ala.* 58; 3 *Ala.* 281; 10 *Me.* 281, *and cases there cited.*

9. And if the amendment of a clerical error *is made solely upon evidence contained in other parts of the record and proceedings,* read in the light of the established practice and jurisdiction of the court, it may be made upon motion of any party interested, or even of a stranger (or upon the suggestion of the court itself, without motion), and *without notice to the party who may be interested in opposing the amendment. Notice* is only necessary where the amendment is asked for upon affidavit or other evidence *dehors the record.* — 7 *Cush.* 282; 8 *Fos.* 473; 3 *Ala.* 470; *Ibid.* 281; 2 *Gilm.* 437; 24 *Ala.* 468; 7 *How. Miss.* 592; 6 *How. Miss.* 93; 2 *Wall. Jr.* 570.

10. *Clerical* errors may be amended either before or after error brought to reverse the judgment on account of the defect amended, and either by the court in which the proceedings were had or in the court of review. — 1 *Blackf.* 132; 4 *M. & S.* 93; 22 *Ohio,* 11; 22 *Vt.* 300; 7 *T. R.* 350; 7 *Gill. & J.* 78; 5 *Ala.* 223; 5 *Eng. L. & Eq.* 349; 7 *Cow.* 524; 6 *Cow.* 42; 6 *Pick.* 572.

11. Or pending an action founded upon the defective record, or asserting rights under it. — 2 *Gilm.* 437, 451; 8 *Ired.* 70; 6 *How. Miss.* 93; 5 *Ired.* 12; 1 *Cow.* 189; 9 *Ala.* 58.

12. Or after action brought, or motion made, to take advantage of the alleged defect, and when the effect of the amendment will be to defeat the action or motion — 19 *Me.* 111; 1 *Pick.* 351; 7 *Cush.* 282; 1 *Cai.* 9, 10; 6 *Greenl.* 48; 9 *Ala.* 335; 3 *Watts,* 87; 24 *Miss.* 188; 2 *Ham.* 246.

13. And where a defective record is offered in evidence on a trial before the same court in whose custody the defective record is, a merely clerical error may be amended upon the mere motion of the court upon the trial, and when the record is offered in evidence — 3 *Watts,* 87; 2 *Gilm.* 437, 451; 1 *Cai.* 9, 10; 6 *How. Miss.* 93.

14. And where the error in a record or process, which

EMERY *v.* WHITWELL.

is offered in evidence in a collateral action, either in the same or in a different court, is *clerical*, and therefore amendable as a matter of right from what appears upon other parts of such record, the record will be treated, and will have the same effect, as if amended, though no amendment is actually made; for, if the record is amendable, it is not wholly void, and it can not be impeached in a collateral action except for defects which render it a nullity. — 3 *Watts*, 87; 4 *Dev.* 295; 1 *Pick.* 351; 7 *S. & R.* 178; 19 *Ohio*, 67, 104; 4 *Wend.* 462; 5 *Blackf.* 536; 2 *Pa. St.* 335; 10 *Ired.* 149; 8 *Wend.* 679; 11 *Humph.* 192; 6 *Humph.* 281.

15. It can not be objected to the amendment of a merely clerical error in a record, upon evidence contained in the record itself, that it may affect the rights of third parties, acquired subsequently to the judgment amended, and which are adverse to the rights claimed under the judgment; for, by the very theory upon which the court proceeds in making such an amendment, such parties are chargeable with notice of what the record ought to be, and what it was intended to be. — 13 *Ired.* 425; 3 *Johns.* 526; 7 *Johns.* 217; 18 *Johns.* 81; 19 *Johns.* 449; 1 *S. & M.* 338; 14 *Pick.* 28; 7 *Cow.* 524; 9 *Ala.* 58.

*A. Blair*, for defendant in error:

This court will not review its former decision in this cause. — *Roberts v. Cooper*, 20 *How.* 268; *Oakley v. Aspinwall*, 3 *Kern.* 500.

If the former decision needs support, the following cases sustain it: *Wootan v. Manning*, 11 *Texas*, 327; *O'Connor v. Mullen*, 11 *Ill.* 57; *Goddard v. Coffin*, *Davies*, 381; *Lisle v. Rhea*, 9 *Mo.* 172; *Ibid.* 354; *Hill v. Fiernan*, 4 *Mo.* 316; *Evans v. Hind*, 1 *McMul.* 490; *Bayken v. State*, 3 *Yerg.* 426; *Wooster v. Clarke*, 2 *Pike*, 101.

MANNING J.:

This case is brought here by writ of error, to correct

alleged errors occurring on the trial, in the rejection of testimony. Whitwell and Hoover brought an action of ejectment against Emery, in the circuit court of Calhoun county, to recover the premises in dispute, and of which Emery was in possession, claiming title. It appears from the bill of exceptions that on the trial the plaintiffs, to prove their title, gave in evidence a patent from the United States for the land in question, to one Reuben Abbott, dated August 15th, 1833; a deed from Abbott and wife to one Samuel W. Abbott, dated February 25th, 1841; a deed from Samuel W. Abbott and wife to Martha Mathews, dated June 3d, 1842; and a deed from Martha Mathews and her husband to the plaintiffs, dated March 23d, 1844. And defendant having admitted he was in possession of the premises, the plaintiffs rested.

The defendant claimed title to the land under a sheriff's deed, given on a sale of the premises under an execution issued on a judgment obtained by defendant and his wife against Reuben Abbott, on the 6th of December, 1841, in the Circuit Court of Calhoun county. To prove the judgment, he offered in evidence the following entry on the journal of the circuit court, with the files and entries in the case:

"*Reuben Emery and Harriet L. Emery v. Reuben Abbott.* Dec. 6th, 1841.

" On hearing counsel in this cause, ordered, on motion of George Woodruff, plffs.' att'y, judgment for the plffs. on demurrer, and that it be referred to the clerk to compute the amount due on the bond mentioned in plaintiffs' declaration, and the clerk having computed the amount due by the condition of said bond, at $800, the penalty thereof, to be discharged on the payment of six hundred twenty - four dollars and eleven cents, with costs to be taxed (624.11)."

Also a transcript of a judgment, in this court, in the same cause, affirming the judgment of the circuit court

with ten per cent. damages and double costs, on 12th September, 1842. This evidence, with other evidence offered at the same time and in connection with it, was objected to by plaintiffs, and rejected by the court; and an exception was taken by defendant.

Admitting the journal entry of the circuit, with the files and entries in the case, did not prove a final judgment, there was proof of such judgment in the certified copy of the proceedings in this court, where the judgment was affirmed, which shows a formal record of the judgment attached to the writ of error removing the cause here.

By the Revised Statutes of 1838, and previous thereto, it was the duty of the clerk of the circuit court to make, in vacation, a complete record in a book, of all cases finally determined, and at the next term to present such book to the judge, who was required to compare the record so made by the clerk, and, if found to be correct, to sign it. — *Rev. Stat.* 1838, *p.* 410, §10; *Laws of Mich.* 1827, *p.* 124, §24. In 1839, judgment records were dispensed with in cases settled by the parties before final judgment. — *S. L.* 1839, *p.* 223, §21. By the fee bill of 1840 (*S. L.* 1840, *p.* 183), the clerk was to have ten cents a folio for making a complete record in each case, when required to make it by a party, and not otherwise. And by the Revision of 1846, these several statutory provisions were repealed, and we now have no judgment record, properly speaking. The journal entries, files, and office entries, are the only records we have, since that Revision, of judgments in our courts of record. I mention these changes in the law to account for a formal record, signed by the clerk and judge of the circuit court, being in this court, while no record is to be found in the circuit court. Judgment was rendered in the circuit on the 6th of December, 1841, after the act passed in 1840, which act was virtually a repeal of the law requiring judgment records, except when one of the parties required a record to be made. That one

was made, and most probably at the request of the defendant Abbott, who sued out the writ of error, the transcript offered to be given in evidence shows.   It was evidence both of such record and of the judgment of the circuit court, and the judge erred in rejecting it.

On the argument it was insisted by defendants in error, that the judgment of the circuit court should be affirmed without hearing the plaintiff in error, although in court, urging a right to be heard, and alleging error in the record, as the same questions had been decided in the court, in this same suit, against plaintiff in error, on questions reserved by the circuit judge on a former trial for the opinion of this court.   When this is the case, the court will not, I think, be very likely to hear a second argument without some satisfactory reason for doing so, but will be governed by circumstances and a regard to the rights of the parties.

The questions before us are entirely different from the questions before the court in *Whitwell and Hoover v. Emery*, 3 *Mich.* 84.   But one of the two questions decided in that case could possibly be made on the bill of exceptions before us, and that is one of no importance to either party, in the present aspect of the case.   I allude to the amendment made on the first trial, by the circuit judge, of the journal entry of the 6th December, 1841.   The judge permitted the entry to be amended, by inserting the following words between the words "at," and "$800," namely, "six hundred and twenty-four dollars and eleven cents, ordered final judgment for," so that the entry would read "the clerk having computed the amount due on said bond at six hundred and twenty-four dollars and eleven cents, ordered final judgment for $800, the penalty thereof, to be discharged on the payment of," &c.   If it was necessary to decide whether such an amendment could be made, I should not, by reason of the decision in 3 *Mich.*, feel warranted in refusing to hear counsel upon it, as we

have facts before us touching the question that were not then before the court. The journal entry and subsequent proceedings, as the issuing of an execution and the like, were all the court then had to act upon. With all the prior proceedings in the cause before us, it is still my intention not to decide the point then decided, as from the views I have already expressed it is unnecessary.

There is a clerical error in the record of final judgment sent to this court on the former writ of error, in stating the judgment to be for the amount the clerk found to be due, instead of the penal sum of the bond, to be discharged on the payment of that amount. The error, however, is one so manifest from an inspection of the whole record, that it may not only be amended at any time without notice, but the same force and effect may be given to the record as if it had been amended. The authorities are very full and clear on these points. Instead of naming them, I refer to the brief of counsel for plaintiff in error, where the cases may be found arranged under different heads.

The court, therefore, erred in rejecting the certified transcript of the record of this court; and as the further evidence offered was doubtless rejected on the supposition there was no proof of a judgment, I deem it unnecessary to notice the other assignments of error.

The judgment should be reversed, with costs.

CHRISTIANCY J.:

I agree substantially in the opinion of my brother Manning in this case, though I do not rest my opinion so much upon the complete record returned to the Supreme Court in the case of *Abbott v. Emery*, or upon the affirmance of the judgment in that court. I come to the same result from the files and entries in that cause in the court below.

If, on the trial in the court below of the cause now under consideration, nothing had been offered in evidence

but the single entry of December 6th, 1841, I might agree in the result at which the Supreme Court arrived in this case, reported in 3 *Mich.* 84, as this entry showed nothing, of itself, upon which the judgment was based, and it could not be seen with certainty what the judgment ought to have been. But the defendant offered, in connection with this, the files and entries of the circuit court in the case in which that entry was made. From these files and entries it appeared that the declaration was in debt on a money bond, in the penalty of eight hundred dollars, the condition of which is set out on oyer. To this declaration the defendant pleaded *nil debet*, to which plaintiffs demurred; upon this, the defendant filed a new or amended plea (abandoning, of course, the first plea). This new or amended plea was clearly frivolous; the plaintiffs again demurred, and the defendant joined in demurrer. Then follows the entry in question of December 6th, 1841. This entry, though very informal, sufficiently shows, when taken in connection with the files and other entries, that the demurrer had been argued by counsel, and was sustained by the court; that judgment for plaintiffs was ordered on the demurrer, with costs to be taxed; and it was referred to the clerk to compute the amount due on the bond (evidently the condition), and, substantially, that he had computed the amount at six hundred and twenty-four dollars and eleven cents. It is true the entry literally states that he had computed the amount due on the condition of the bond at eight hundred dollars, to be discharged on the payment of six hundred and twenty-four dollars and eleven cents. And if we did not know what was the bond described in the declaration, or the nature of the pleadings, we could not know what the judgment on the demurrer ought to have been. But, when considered with reference to the declaration and the pleadings, we see that no other judgment could have been given on the demurrer than for the penalty of the bond; and this judgment, in such a case, is in its nature a final judgment.

If the defendant wished to plead anew, he should have applied to the court for leave to withdraw his demurrer, and this should, regularly, have been done before judgment upon the demurrer. This he does not appear to have done before or after the judgment. It is possible that this judgment, though final, might be opened or vacated on good cause shown; and so also may final judgments in other cases, under peculiar circumstances; but no court would be likely to do this after two successive insufficient pleas.

Judgment on demurrer, in such a case, is not like a judgment by default: the latter is the act of the party, and needs confirmation by the court; the former is the judgment of the court upon facts admitted by the pleadings; it is the deliberate judgment of the court itself. It is true, judgment against a defendant on demurrer, in an action for damages, is not practically final; as a computation or assessment must be made, to ascertain the precise amount of the judgment. But in this action of debt on the penalty of the bond, the judgment for the plaintiff for the debt, must be for the penalty of the bond, though the sum due were but one dollar; the assessment by the clerk could not alter it; it was not, therefore, necessary to precede the final judgment, as in a case for damages, or even in other cases of debt; but only became essential, if at all, to ascertain the amount to be collected on the execution, in discharge of the judgment for the debt. The reference to the clerk, therefore, furnishes no inference that the judgment was not intended to be final.

The clerk, in making the entry of judgment on the demurrer, and the reference, made a palpable blunder in stating the amount due by the condition of the bond at eight hundred dollars; yet he states it as the penalty, and finds the sum on the payment of which it is to be discharged, to be six hundred and twenty-four dollars and eleven cents, which is evidently the sum really computed to be due. No reference could authorize him to determine the penalty; that was fixed by the bond.

A similar blunder, or rather series of blunders, some of which are still more gross, appears in the judgment as stated in the transcript of the complete record in the same case, returned to the Supreme Court; as the judgment is there stated to be for six hundred and twenty-four dollars and eleven cents debt — a judgment different from that recited in the execution previously issued, which was for eight hundred dollars debt, as it should have been in fact.

It is not only evident that these are mere clerical errors, but a reference to the pleadings and files in the case, and a fair construction of the whole, make it equally evident what should have been inserted in the place of these errors. We can therefore discover what those entries should have been, and the true intent and meaning of the whole record, with as much certainty as if those errors had not occurred. We can not fail to see that a final judgment was intended, and should have been entered, for eight hundred dollars debt and the costs of suit, which was intended to be discharged on payment of six hundred and twenty-four dollars and eleven cents (the amount due by the condition) with those costs—the precise amendment made by the circuit judge on a former trial of the present cause, and which he doubtless made from an inspection of the same files and entries. I can not doubt it was entirely competent so to amend the record. But though such amendment may be made when the true intent appears from the construction, the actual amendment is not necessary, nor is it often in fact made; but the record will be treated as amended, or, rather, as if no such error appeared. A record must, like all other writings, always be subject to construction, for the purpose of ascertaining its intent, and its effect. In fact, the record is what its fair construction makes it. The question of amendment, in such a case, is therefore practically resolved into a question of construction; and this question may and must arise, whenever and wherever the record is brought in question; and the period of time which may have intervened is wholly imma-

terial. Nor can notice to any of the parties be necessary to authorize the court to make it. No one's rights are affected by it, as the effect of the record is not changed. All who may have consulted the record, or acted upon the faith of it, must be presumed to have notice of all which the proper construction of the whole record discloses; in other words, of the effect of the record.

If the nature of the error, and the appropriate amend-ment, depend upon matters not apparent on its face, but which require to be shown by evidence *aliunde*, notice should be given to the parties to be affected; and they should have an opportunity to be heard, before the amendment is made.

CAMPBELL J.:

This case, as now presented, differs from that presented to the late Supreme Court in this important particular: That the amendment then brought in question was not ac-companied by any thing to amend by, and the court could not sustain it in the absence of a sufficient showing; where-as, in the present case, the whole record is before us. It appears from this that a declaration was filed upon a money bond in the sum of eight hundred dollars, and a single special plea interposed, whereby no issue was raised upon the making of the bond or the amount due, and the only question raised was one collateral to the merits. Upon a demurrer to this plea, judgment was given for the plain-tiffs, and an order entered giving such judgment, and pro-ceeding to recite a reference to the clerk, but showing that some clerical omission had taken place, whereby some-thing else failed to be stated. An execution was issued for the penalty of the bond as the debt recovered, and the sale was had under it. The sustaining of the demurrer to such a plea as this was, unquestionably entitled the plaintiff to a judgment for eight hundred dollars, and per-haps was, in itself, a sufficient judgment, inasmuch as there

was no further reference needed. Upon a money bond under the statutes then in force, the judgment could be for nothing but the penalty. Whatever may have been the form of the entry, and whether such a judgment was regularly a final judgment or not, the entry was so treated, and execution issued. If any doubt could reasonably arise concerning the judgment the plaintiff was really entitled to, an amendment might not have been possible without some evidence to supply the defect, and then notice would be requisite. But where no question can arise as to what were the rights of the plaintiff upon the record itself, and where it would not have been in the power of the court to render a different decision without error, an omission to state that right, or to render that judgment properly upon the record, can be regarded as nothing but a clerical omission, and is not only amendable of course at any time, but in reading the record it should be considered as supplied, whether actually corrected or not. Whether we infer the judgment from the records of the court below, or whether we take the formal record from the return to the writ of error, which shows a regular judgment for too small a sum, we have, in either case, the pleadings and decision on demurrer to show what the true amount of the judgment should have been, and the execution upon its face is correct in accordance with that. The authorities are so conclusive upon the duty to amend when asked upon such a state of the record, and of the propriety of reading the whole record, when brought up collaterally, precisely as if the amendments due as a matter of right had been actually made, that as the case stands before us we are bound to sustain the execution title. Lapse of time can not enter into consideration, where the record is merely made to declare expressly that which is the only thing which could be legitimately expressed by it as it stands already.

EMERY *v.* WHITWELL.

MARTIN Ch. J., *dissenting:*

This court held when this case was formerly before it, that there was nothing in the journal entry of the circuit court from which it could be inferred that a final judgment was ever rendered therein. — See 3 *Mich.* 86. There was before us the journal entry, from which it appeared that a judgment had been rendered upon demurrer, and a reference ordered to the clerk to compute the amount due upon the condition of the bond, and an entry of such computation. From all this it was manifest that the court below did not intend that such judgment should be final, but interlocutory; and whether that court had power to render a final judgment at that stage of the cause, or not, so long as the intention not to do so was obvious we had not the power to transform it into a final judgment. But under the statutes of 1838, this reference was not only proper, but necessary before final judgment. — See *R. S.* 1838, *p.* 460.

That a clerical error may be amended at any time, I do not doubt, nor did this court then determine. That question was not before us, and the judgment was based upon the fact that the journal did not show that a final judgment was ever rendered, or was ever intended to be rendered, by the court below. The journal clearly enough showed that it might have been, but not that it ever was. This was not regarded as a clerical error in the entry of a judgment, but as a want of evidence of judicial action. There was, in short, an absence of a judgment — nothing to be amended.

But we have now before us a return to the Supreme Court, in 1841, showing the pleadings and proceedings in this case, and also what purports to be a judgment of the circuit court. To my mind it is a little remarkable, not to say suspicious, that on a trial in the same court in which the record is supposed to remain, if one was ever made, the plaintiff in error has been compelled to resort to this return, to show that there ever was a judgment rendered by the court below.

Emery v. Whitwell.

I can not believe that any such judgment record was ever made and signed, but I regard the whole thing as a return of the clerk merely, in a form which he supposed proper, and perhaps necessary. It is evidence of a return to a writ of error, but not of a judgment by the circuit court. If this is not so, why the necessity of ransacking the files of the Supreme Court for such evidence, when the original record would be found in the book of records of the circuit court — or how was it admissible in evidence without showing a loss or destruction of the original?

But it appears that the judgment, as certified by the clerk, is erroneous; it is not a judgment in debt for the penalty, but for the amount due by the condition of the bond. From this I also infer that it is the clerk's judgment, and not the court's. The same error crept into the judgment of the Supreme Court, but this latter was evidently rendered upon motion, and not after an argument, as the award of damages and double costs clearly shows.

Here is, therefore, evidence of two erroneous judgments — one of which is of another tribunal from that having original jurisdiction of the cause; the other of which I can not believe to have been any thing but a clerk's formal return, and not a copy of a record, and consequently no evidence of a judgment — offered to show that the circuit court determined to, and did, render a final judgment in the cause, and that for the penalty of the bond, and thus to correct an error claimed to exist upon the journal of that court, which is the vital one of an entire want of a judgment. We are indeed a court for the correction of errors if we make out of all this confusion a good judgment.

I adhere to the former decision of this court, notwithstanding the additional evidence now before us that there is no evidence that the circuit court ever rendered a final judgment in this cause, and consequently there is no error in its journal which can be corrected.

*Judgment reversed.*