## E. Wright Hall, Administrator, etc., v. Arthur N. Grovier.

*Administration account: Interest.* Where an administrator has received money, which in fact belonged to the estate of the decedent, and which he was informed, before rendering his final account, by persons who had knowledge of the matter, and had reason to believe, or know, belonged to the estate, it is no excuse for his neglect to charge himself with it in his administration account, that at the time he so received it, he did not know that it belonged to the estate, but supposed, in good faith, that it belonged to the widow of the deceased, of whom he received it, and that he gave such widow security for the same, as for a loan to him, individually, and that he took up and satisfied such security before he was informed, or had reason to believe, that the money belonged to the estate. And where he has retained such money for a long period, under the circumstances disclosed in this case, and failed to close up his trust, and it has been found necessary, finally, to coerce him, by legal proceedings, to effect a settlement of the estate, it is proper that he should be charged with interest.

*Statutes construed: Administrator: Accounting.* Under our statutes relating to the accounting of executors and administrators, two things are contemplated, which are wholly distinct: One, the rendering of an account, and the other, the settlement of an account; and the object of a settlement is not merely to ascertain what items ought to be placed on the debit side of the account, subject to proof on a subsequent proceeding, that, as between the administrator and the estate, he ought not to be charged therewith, but rather to judicially liquidate and settle the affairs of the trust, and determine the relative rights of the estate and the administrator; and the proceeding involves an adjudication upon each item.

*Appeal from probate court: Administration account: Practice in circuit court.* On an appeal to the circuit court, from the probate court, upon an administration account, the judgment of the circuit court should settle and determine the account; and that determination should be certified to the probate court for action there, upon the basis of such judgment; but the circuit court has no authority to fix the time within which the administrator shall pay over the balance found against him. Where, however, such judgment is correct in other respects, it will not be reversed on writ of error, for undertaking to fix such time, but this will be disregarded, and treated as nugatory and not binding upon the probate court.

*Submitted on briefs July 13.        Decided October 8.*

Error to Macomb Circuit.

*Newberry, Pond & Brown,* for plaintiff in error.

*R. P. & J. B. Eldredge* and *Henry M. Cheever,* for defendant in error.

Graves, J.

This was an appeal by the defendant in error, from an order of the probate court for the county of Macomb, upon an accounting of the plaintiff in error.    In the circuit court the matter was heard before a jury, who returned a special verdict, upon which a final order in the nature of a judgment was entered.    A bill of exceptions was settled, and the case is now before us upon writ of error, brought by the administrator.    The course of the inquiry in the circuit court was regulated by a stipulation that the issue to be tried, "shall be the same as was tried in the said probate court, to wit: should the administrator, as such, account for the following items, to wit: the sum of one thousand dollars, delivered to said E. Wright Hall, on or about the sixth day of June, A. D. 1852, by Mrs. Olivia Grovier.

"2.   Should he account for the sum of two hundred dollars, delivered to him by the said Olivia Grovier, on or about the fifteenth day of July, A. D. 1851.

"3.   Should he account for the sum of two hundred dollars, delivered to him by the said Olivia Grovier, on or about the fourteenth day of October, A. D. 1856.

"4.   Should he account for certain bank stock, being the same mentioned in the notice of appeal.

"5.   Should he account for, or allow, interest on the above mentioned sums; if so, how much, and from what time."

During their consultations, the jury appeared in court, and reported that they had not at that time been able to agree upon a finding in relation to the bank stock, and defendant in error then stated that, if they were unable to agree upon that subject, he would assent to their rejection of the claim relating to it.    The jury then delivered a verdict in the following terms:

" We, the jury empanelled and sworn in this cause, find as follows:

" *First.* That the sum of one thousand dollars, delivered to the administrator on or about the fifth day of June, A. D. 1852, was moneys belonging to the estate of Isaac J. Grovier, deceased, and that E. Wright Hall, the administrator, should account for the same in his final account with the estate.

" *Second.* The said administrator should account for the sum of two hundred dollars, delivered to him by Mrs. Olivia Grovier, widow of the deceased, on or about the fifteenth day of October, A. D. 1851.

" *Third.* The said administrator of said estate should not account for the sum of two hundred dollars, delivered to him by Olivia Grovier, widow of the deceased, on or about the fourteenth day of October, A. D. 1856.

" *Fourth.* The said E. Wright Hall, as administrator of the estate of Isaac J. Grovier, deceased, should not account for the bank stock mentioned in the notice of appeal.

" *Fifth.* The said E. Wright Hall, administrator of the estate of Isaac J. Grovier, deceased, should account for, and be charged, interest upon the several accounts that ought to have been enforced in the said final account, as follows:

" 1. Upon the first claim, of one thousand dollars, he should pay, and account for, interest from the fifth day of June, A. D. 1852, up to the time of final settlement, amounting 'at this time to the sum of thirteen hundred and forty-nine and five one-hundredths dollars.

" 2. Upon the second claim, for the sum of two hundred dollars, interest should be allowed and charged against the said administrator, in his final account, from the fifteenth day of July, A. D. 1851, such interest amounting at this time to the sum of two hundred and eighty-two and thirty-three one-hundredths dollars.

"3.   Upon the third claim, for the sum of two hundred dollars, delivered to said administrator, interest should not be allowed and charged against the said administrator, in his account with said estate from the fourteenth day of October, 1856, amounting at this time to the sum of two hundred and eighty and eighty-three one-hundredths dollars.

"4.   Upon the fourth claim, for bank stock, interest should not be charged and allowed, in the said account with the said estate, and that the said bank stock and interest is rejected for the sake of agreement, and by consent of the plaintiff's counsel."

Upon this verdict the court adjudged, that the order of the court of probate, allowing the final administration account of said administrator, should be reversed; that the administrator should account for, and pay to, the estate two thousand eight hundred and thirty-one dollars and thirty-eight cents, with interest at seven per cent. per annum, from September thirteenth, 1871, the date of the verdict; that he should settle his account, as administrator, before the probate court, and pay over to the persons entitled thereto, the said sum of two thousand eight hundred and thirty-one dollars and thirty-eight cents, within ninety days; that Arthur N. Grovier, the then appellant, should recover his costs from the said " E. Wright Hall, administrator aforesaid," and have execution therefor, and that the cause should be remitted to the probate court, for further proceedings in pursuance of such judgment.

Nine errors are assigned, but only the second, eighth, and ninth are insisted on.

On the part of defendant in error, evidence was given tending to show, among other things, that Isaac J. Grovier died on the 26th day of July, 1850; that Hall was appointed administrator thereafter in the same year; that Mrs. Gro-

vier, the widow, delivered to him, on the 15th of July, 1854, two hundred dollars, which had been some time before paid to her on demands belonging to the estate, and took from him his individual note, running to herself, therefor; that, shortly after the death of Mr. Grovier, his widow found, and took from a trunk of the deceased, one thousand dollars, which, on the 5th of June, 1852, she delivered to Hall, and received from him therefor his mortgage on real estate, as for so much money loaned by her to him in his individual character; that Hall was the brother of Mrs. Grovier, the widow of Isaac J. Grovier, and was well acquainted with the financial ability of the deceased; and that Mrs. Grovier had no property when she married, and acquired no separate property afterwards; that, after the death of Mr. Grovier, Hall acted as the business agent of his sister, the widow, she having no business experience, and that she depended entirely upon him, and allowed him to control every thing relating to the estate; that, in giving his account as administrator, he did not include the foregoing items, but knew, all the time, that the moneys belonged to the estate.

On the part of the administrator, evidence was likewise given, tending to show, among other matters, that he had no knowledge, or reason to believe, that the moneys received by him from his sister, the widow, belonged to the estate, until a short time before he rendered his final account, and supposed they belonged individually to her, and that he dealt with her in respect to such moneys, according to that opinion, and in the faith of it; that he borrowed the money from her, and paid her interest upon it.

In view of this evidence, the second assignment of error complains of the following passage in the charge to the jury:

"If Hall was informed, by persons who had knowledge of

the matter, and he had reason to believe, or know, that these moneys belonged to the estate, at any time before he rendered his final administration account, and he had taken up and satisfied the security he had given, before he was so informed, that he should account for the same with interest, and the prior treatment of the moneys as the money of Mrs. Grovier, or prior want of knowledge as to their source, is no defense to the claim of the appellant."

It is argued for the administrator, in support of the exception to this instruction, that, if the facts were such as the evidence for Hall tended to prove, then he never had possession of the money in question as administrator, and ought not to be charged with it, and certainly not with interest upon it.

This position is not assented to.  If the money, when Hall received it, belonged to the estate, and if, before he rendered his account, he ascertained, or had reason to believe, that it was the property of the estate, it was certainly right that he should be charged with it in his account.

In contemplation of law it was still in his hands.  His ignorance of the true title, if he was ignorant of it, when he received the money, had not led to its application under the trust in some way foreign to the legal destination, and no fact was shown or suggested, of a nature to excuse him as an administrator, from being debited with the amount.

It is manifest that, before he rendered his account, he knew, or had reason to believe, that the money belonged to the estate he represented, and still he refused to charge himself with it, or acknowledge, by his account, that it had been received.  This was such a misbehavior in his trust as the court ought to notice in an accounting.

The decedent died in July, 1850, and the administrator was appointed shortly after.  He received two hundred

25 MICH.—55.

dollars in October, 1851, and one thousand dollars in June, 1852. During the long period which has intervened, the administrator has retained the money and failed to close up his trust, and in order to effect a settlement of the estate at last, it has been found necessary to coerce him by legal proceedings. Under these circumstances, it seems to me quite proper that he should be charged with interest. The estate will thereby receive no more than justice, and the trustee, in view of the facts disclosed by this record, will have no just ground for complaint.

The eight and ninth assignments of error, relate to the form of the judgment. It is said, that the judgment is erroneous because it orders the administrator to pay to the estate the sum fixed by the jury, with interest from the date of the verdict, and in another paragraph requires him to settle his account before the probate court, and pay over the sum found by the jury, within ninety days, to the persons entitled.

Before considering the construction of the judgment, it seems proper to attend to the reasoning of counsel for plaintiff in error, on this subject. He contends, in his brief, that the judgment should have been simply that the administrator charge himself in his account with the several sums belonging to the estate, found by the jury to have been received by him, and that the circuit court should then have remitted the case to the probate court to complete the accounting; and, as serving to show that such was the judgment which the case required, and that no other was adapted to it, he states that the only issue was, "whether Hall should account for—that is, charge himself in his account with—certain sums of money;" that "it having been determined, by the verdict of the jury, that he ought to charge himself, he had a right to discharge himself by accounting for the disposition made of such money;"

that, as evidence had been given tending to show that Mrs. Grovier was a creditor in a larger sum than that in question, and had received the benefit of the money, it was still open to the administrator, in completing his account in the probate court, to show in his discharge that the money had gone into the hands of a creditor of the estate.

I have been thus particular in repeating the argument in the brief, because I think it proceeds upon a misapprehension of the nature of the proceeding before us, and one, too, involving serious consequences. It certainly mistakes the proceeding, unless the record is misleading, and unless the course which seems to have been pursued, has been incongruous and inappropriate.

Although our statutes which relate to the matter of accounting by executors and administrators, are not very minute, precise, or instructive, there are still some points which are pretty clear.

Two things are contemplated which are wholly distinct. They are: the *rendering* of an account, and the *settlement* of an account. The rendering of an account, and the settlement of it after it has been rendered, are not one and the same proceeding, though the latter is often directly connected with the former. The rendering must precede the settlement.

It is the design of our laws that our probate records shall furnish all requisite information relating to the estates of deceased persons, in order that heirs, creditors, and all others interested may resort to them with confidence, for the purpose of ascertaining their respective rights, and the course of administration. In keeping with this design, the law requires " every executor or administrator to *render* his account of his administration within one year from the time of his receiving letters testamentary, or of administration," unless, for the reason stated in the statute, the

court gives further time and he may be required to *render* further accounts from time to time, until the *estate* is wholly *settled*, and may be examined on oath upon any matter relating to an account.—*Comp. L.*, § *2985*.

Here the duty enjoined upon the representative, and the authority given to the court, are intended to secure upon the records a full and complete exhibition of the condition of the estate from time to time, and of the course of the trustee in the performance of his trust.    The representative having rendered his account, the matter is open to such corrections as the truth requires.    Settlements may be had from time to time, of particular accounts or items as is thought best, and a final settlement should take place, preparatory to the closing up of the trust.    In case of settlement, whether intermediate or final, notice must be given of the time and place to all persons interested (*Comp. L.*, § *2990*); and this requirement falls in with the nature of the proceeding.    The object of a settlement is not merely to ascertain what items ought to be placed on the debit side of the administrator's account, subject to evidence on a future proceeding, that he ought not to have been charged therewith as between himself and the estate.    Its scope is more comprehensive and complete.

The end to be accomplished is to judicially liquidate and settle the affairs of his trust, and determine the rights of the estate as against him, and his rights as against the estate, and the proceeding involves an adjudication upon each item.    Parties interested may surcharge, or falsify the account, and the administrator may proceed by discharge, and defense.    The dispute, if any, may turn upon the introduction and allowance of new items, or the allowance of old ones.    Evidence may be produced on each side, so far as necessary, and when the hearing is closed, the court must adjudge what to allow and what to disallow, and set-

tle the particular account.    When the determination is
made, the account adjudicated upon is settled on both sides.
The result is not partial, and measurably inconsequent,
as it would be if it only effectuated a correction of the debit
side of the account as rendered by the administrator, and
left it open to him thereafter, in effect, to strike out
inserted items, by proof that he had applied them for the
benefit of the estate, before the settlement.

The tenor of the record strongly implies that the case
was one upon settling the administrator's account, and that
defendant in error insisted on surcharging the account
with certain items, which was resisted by the administrator,
on the ground that such items were not then chargeable
against him, in favor of the estate, and that the jury
found in his favor, as to part of such items, and against
him, as to the residue.    If this were the case, then the
determination disposed of whatever defense the administra-
tor had, based on the particular application he had before
made of the money, and he could not go into the probate
court thereafter, and, in effect, overturn that adjudication,
by obtaining a decision there, that when the judgment of
the circuit court was given, the demand was not allowable
against him.

If upon the whole case the opinion was admissible,
that nothing more was done than to ascertain whether the
specific items were proper ones for the debit side of the
account, and that the decision upon such inquiry, that they
were so, was still subject to be practically overridden by a
regular decision of the probate court, upon the grounds
suggested, then there would be room for contending that
the action of the circuit court lacked that final character
required to authorize a writ of error.—*Holbrook v. Cook, 5
Mich., 225.*    The administrator has, however, brought the
case here, and by suing out the writ of error, he substan-

tially asserted that the case was, according to his understanding, a proper one to be reviewed on writ of error.

In taking this view, the court think he was correct, and it cannot accede to the argument in the brief, that the object of the trial was to ascertain, in effect, no more than whether certain items should have been originally placed in the inventory. Having considered the reasons urged by the plaintiff in error for reversal, based on the form of the judgment, and deeming them insufficient, it remains to add a few words upon the general objection to the judgment entry. It is undoubtedly true, that this entry has some formal inaccuracies. The court below was required to settle the account in controversy, and to award costs, according to law, but leaving it to the probate court to go on, upon the footing of the settlement adjudicated in the appellate court. The circuit court ought, therefore, to have made an order upon the finding, deciding in favor of the allowed items, and against those disallowed, and certifying the determination to the probate court. The time of payment by the administrator was not a legal consequence of the verdict, and the court had no power to make any order concerning it. When the issues, and the question of costs, were disposed of, the rest was for the primary jurisdiction, the probate court. The objectionable passage in the order was an excess of jurisdiction, was not binding on the probate court, and never had any force. No process was awarded to enforce it, and, by itself, it was quite harmless.

Disregarding the passage in question as nugatory, and as incapable of producing any prejudice to the plaintiff in error, I think the residue of the entry substantially correct. The form, perhaps, might be improved, but I discover no essential irregularity. Whatever is open to criticism in the judgment entry, is cured by the statute of amendments. —*R. S. 1846, Chap. 104; Emery v. Whitwell, 6 Mich., 474.*

HALL *v.* GROVIER.

This disposes of all the points not abandoned by the plaintiff in error, and leads to an affirmance of the judgment, with costs.

The other Justices concurred.