FAIRCHILD VS. DEAN.

A judgment was entered by the clerk of a circuit court upon a warrant of attorney, on the 17th of January, 1855, but was not signed by a judge or court commissioner, and was therefore a nullity. *Held*, that the circuit court had no power, in May, 1861, upon motion, to order that the judgment should be then signed by the proper officer *nunc pro tunc*, and should be valid from the day it was entered, saving the right of appeal or writ of error the same as if the judgment had been signed at the date of the order, and saving also the rights of intermediate *bona fide* purchasers of real estate of the judgment debtor. DIXON, C. J., dissented.

An order granting such motion is appealable.

APPEAL from the Circuit Court for *Dane* County.

Judgments were entered by the clerk of the Dane circuit court, on the 17th of January, 1855, in favor of *Fairchild* against *Dean*, upon notes and warrants of attorney, and were recorded in the usual form and docketed, but were not *signed* by the judge or a court commissioner. Declarations on the notes had been filed, and also the warrants of attorney, and the defendant's cognovit for the amount of each of the judgments. In May, 1860, the plaintiff moved the court, upon affidavits, for orders to allow the judgments to be signed by a judge or court commissioner, *nunc pro tunc.* The affidavits stated, among other things, that the judgments were liens upon a large amount of real estate of *Dean,* and that executions had been issued on them and levied on a stock of goods belonging to *Dean* of sufficient value to pay the same, but that a third party, claiming the goods as assignee of *Dean,* had replevied them from the sheriff, and that it was hazardous to go to trial in the replevin suit until the judgments had been signed by the proper officer. The motion was opposed by *Dean,* and the circuit judge denied it, on the ground that the court had no power to order the judgment to be signed then as of the 17th of January, 1855. *Fairchild* appealed to the supreme court, which decided that the order denying the motion was not appealable. 13 Wis., 329. In March, 1861, *Fairchild* renewed the motion in the circuit court. The court granted the motion, and ordered that the judgments, from and after the signing of them by the judge of that court, as of the 17th of January, 1855, should be valid and

effectual as if they had been signed on that day, saving the <span>January Term, 1862.</span> rights of *bona fide* purchasers of the real estate of *Dean*, between that date and the day of granting said order, and saving also to said *Dean* the right of appeal or writ of error, the same as if the judgments had been signed at the date of said 'order. From this order, *Dean* appealed.

FAIRCHILD v. DEAN.

*Chauncey Abbott*, for appellant.

*J. C. Hopkins*, for respondent.

*By the Court*, PAINE, J. The majority of the court are of the opinion that the court below was right in the view it first took of the question here presented, which was that it had no power, under the guise of an amendment, to create a judgment at that time, and give it effect as from the 17th day of January, 1855.

May 15.

It is assumed in the notice of motion given by the counsel for the plaintiff, that this court decided, when the matter was formerly here, that the court below had the power, in its discretion, to grant the relief asked. Whether or not the judge also placed that construction upon the opinion then given, we cannot tell. But such a construction is clearly unwarranted. The court below had at that time refused the relief asked, upon the ground that it had no power to grant it. The plaintiff appealed from the order refusing, and we held it not appealable. In considering that question we said, "the power was *claimed* only as an exercise of the power of amendment," and as such was addressed to the discretion of the court. Then, assuming according to the plaintiff's own position, that if the power existed at all, it was merely a discretionary power, we proceeded to determine the appealability of the order upon that assumption, but expressly declined to pass upon the question whether the court had the power or not. And there is nothing in the opinion capable of being fairly construed into even an intimation that the position of the plaintiff's counsel, that the court actually had such a discretionary power, was correct.

The statutes of amendments are very broad, and the courts have wisely established a most liberal practice under them. They have freely allowed amendments of all judicial pro-

ceedings in furtherance of justice, and upon just terms. The wisdom and justice of this policy will never be questioned by me. But there seems to me to be a broad distinction between the character of the amendments ordinarily made, and that which was asked for under the name of an amendment in this case. Ordinarily there is something to amend. If a pleading is amended, the amendment takes effect from the time it is made. If a process is to be amended, there is a process first in existence, imperfect it is true, liable to objection on account of some defect, yet not void. The amendment being then made, the process stands as though the defect had not existed. In all these cases there is some foundation for the power of amendment to rest on; there is what would seem absolutely indispensable to an exercise of the power, something to be amended. But in this case that fails. It is not sought here to amend an imperfect judgment. It is not sought to amend the date of an existing judgment, by dating it back to a time before it was actually rendered, which, I admit, it was held could be done, in *Mara v. Quin*, 6 Term R., 8. But it is sought here, as I said in my former opinion, " to create a judgment, and give it a retroactive effect." It seems a perversion of the word amendment, to attempt to disguise under that name the exercise of such an extraordinary power. It will be conceded that from the 17th day of January, 1855, down to the time of entering this judgment by the court below, there was no judgment in favor of the plaintiff against the defendants—neither a judgment in form nor in substance. So far as the possibility of the thing is concerned, it is obviously impossible for any court to make it true, that during that time there was such a judgment. It has been truly, and not irreverently said, that omnipotence itself has no power over the past. If therefore it can be done at all, it can only be done in fiction.

It is true that the practice is established of doing things *nunc pro tunc*. Judgments are entered in that way where the court has had the case under advisement, and before an actual decision one of the parties dies. This fiction is resorted to that the delay of the court may work no injury. But I have always supposed that in such cases the judg-

January Term, 1862.

FAIRCHILD
v.
DEAN.

ments, for all practical purposes, took effect from the time they were actually entered. So mere clerical omissions in respect to judgments have been allowed to be supplied *nunc pro tunc*, where there was a sufficient basis for the exercise of the power. And I admit that the principle upon which some of the cases seem to have been decided, might, by a perhaps natural extension, be held to sustain the power here contended for. But without attempting to go through the authorities in detail, I will say merely that I think none of them have yet gone so far as it would be necessary to go in this case; and that they cannot be said to have established it as a rule of law, that courts may apply the fiction by which proceedings are sometimes allowed to be taken *nunc pro tunc*, to the ordinary entry of judgments between parties, so as to give one a judgment which shall have effect against the other from a time several years before there ever was any such judgment. And I should not be willing to be the first to make such a decision from reasoning derived merely from analogy. The case of *Mara v. Quin*, before cited, seems to come the nearest to sustaining such a practice, of any which I have seen, though in that case the court finally refused the amendment, on the ground that the rights of third parties had intervened. But there is this difference between that case and this, that there was an actual judgment existing which might be amended, even though falsely, while here there was no judgment at all. So the defect in the case of *Williams v. Wheeler*, 1 Barb., 48, was a mere clerical omission, and the opinion of the judge seems to assume that the judgment was not absolutely void by reason of it. The motion was to set aside the judgment, and the judge asks "if it would be in furtherance of justice for him to vacate the judgment" on account of the defect. Thus both court and counsel assume that there was a judgment to amend. But here, under the decision of this court, there was no judgment to vacate—none upon which a writ of error would lie, and of course none to amend. There was no clerical omission here. There was nothing left undone that was ever intended to be done. It was a mere mistake of law in supposing that there could be a judgment without the signature of a

VOL. XV—14

judicial officer To supply the defect requires creation, not amendment. And it seems to me to be forcing the power of amendment entirely beyond its legitimate scope, to carry it to that extent. It seems to me also to be a dangerous practice, productive of confusion and uncertainty in the administration of justice, and tending to subject everything to the uncontrolled discretion of courts. It is claimed that it will promote justice. But justice is best promoted by established rules and systems of procedure, going upon the theory that things done shall have effect only from the time they are done, according to the truth. But once introduce into the ordinary administration of the law, the practice of giving a retroactive effect to judgments and other judicial proceedings, whenever courts may think it will promote justice, and I cannot but think it will become productive of intolerable evil. If this judgment is sustained in its present form, we shall have this anomalous condition of things, that there was a judgment in 1855, by a fiction of the court, sufficient to sustain an execution, and seizure and sale of the defendant's property, and yet no judgment which he could have set aside, or upon which he could have brought a writ of error. The court saves the right of the defendant to appeal or bring a writ of error, which, assuming the fictitious date of the judgment as its true one, would otherwise have been barred. We have, therefore, by this proceeding, a judgment valid between the parties for all practical purposes in January, 1855, and yet a writ of error or appeal may be taken from it as late as May, 1863. I cannot see why a court might not as well allow a summons to be served *nunc pro tunc*, to avoid the statute of limitations after it had run.

I think the following cases sustain my conclusions : *Morrison vs. Dapman*, 3 Cal., 255; *Whitwell and Hoover vs. Emory*, 3 Mich., 84. The latter case was again before the court, and is reported 6 Mich., 474, and the court there held that the record as then presented sufficiently showed a judgment, to allow it to be perfected by amendment. But I do not consider that position in conflict with the previous decision. See also 18 Maine, 186; *Boyd vs. Blaisdell*, 15 Ind., 74; 10 N. H., 303.

It may be that the plaintiff would be entitled now to a judgment for the amount due upon the note, to take effect from the time of its entry. It was suggested that the claim might be barred by the statute of limitations. But if a suit was commenced sufficient to avoid the statute and authorize a judgment *nunc pro tunc*, it is difficult to see why it would not equally authorize one to take effect from its date. But as this question was not discussed, and as no such judgment has been asked for, we shall not decide it, but shall simply reverse the judgment which has been rendered.

We think the order for this judgment is appealable, as every order for judgment must involve the merits.

The former order did not deny the plaintiff a judgment as from that date, nor did the court below pass upon that question. It decided only that it had no discretionary power to render a retroactive judgment, as an amendment, and it was the decision upon that question which we held not appealable.

The judgment and order must be reversed, with costs, and the cause remanded for further proceedings.

DIXON, C. J., dissented.