Pierce *v.* Irish.

---

JOSIAH PIERCE, *Judge, &c. versus* IRISH *& al.*

An adjudication by the Judge of Probate upon a matter, over which he has general jurisdiction, unless it be appealed from, is conclusive, until reversed.

A guardianship account may be settled by the Judge of Probate, after the minority of the ward has expired.

Upon such a settlement, the allowance of an item of charge by the guardian, for his negotiable note, given to the ward for a specified sum, is to be viewed, not as a decree of the court, that such sum is money still due to the ward, in the hands of the guardian ; but as a payment made to the ward.

Such a charge is lawfully allowed, when the Judge of Probate is satisfied it was the intention of the ward to receive the note as a payment. ·

Where a ward, after arriving at full age, has examined the guardianship account, and certified thereon its correctness, and his assent to its allowance, the Judge of Probate does not exceed his authority in allowing the account, although no notice be given to the ward to attend at the settlement.

A neglect for three years, to settle a guardianship account, (except in certain cases,) is a breach of the bond. But if the ward examine the final account, and discharge the balance, by taking a negotiable note for its amount,

Pierce *v.* Irish.

and afterwards the account be accordingly settled in the Probate Court, the damages accruing to the ward from the breach of the bond, will be considered as included in the settlement, or waived.

DEBT on a guardianship bond, given by Irish, in 1833, as guardian to Harriet M. Mason, a minor. The defendants pleaded performance. The ward became twenty-one years of age, on the 7th of June, 1838. The first and only guardianship account was made up as of said 7th June, 1838. It contained charges against her for cash disbursed, articles furnished, and services rendered, all of which left a balance due to the ward, of $1304,67 ; and it also contained a charge for a note of that date, and of the amount of that balance, given to her by said Irish.

Upon that day, the ward indorsed upon the account, a certificate that she had " examined it, and found it correct, and consented and agreed to its allowance." The account was accordingly settled in the probate office, in September, 1839, at which settlement it does not appear that the ward was notified to attend.

On the 9th December, 1841, that note was given up, and a new one of $1393,19, taken therefor.

To show that this note is unpaid, it was introduced by the plaintiff, and contained indorsements made thereupon, of several items, amounting to something over $200, received by the ward between April, 1842, and September, 1843.

All the items in the guardianship account are admitted to be unobjectionable, except that of the $1304,67. The plaintiff now contends, *that* that item, if intended to be allowed as a charge against the ward, was wrongful ; *that* neither of said notes was received as payment, but merely as memoranda, exhibiting the amount due upon the account ; *that,* in taking the notes, she did not intend to exonerate her guardian and his sureties from their liability upon the probate bond ; *that* the proceedings of the guardian, in making the settlement, were fraudulent, and *that* his sureties were knowing and consenting to the fraud.

The plaintiff offered to prove, *that* the ward was the step-

Pierce *v.* Irish.

daughter of the guardian, and an inmate of his family, until after she became of full age ; *that,* for some time prior to said 7th of June, 1838, the guardian was totally insolvent, and has so remained; *that* one month prior to said day, he made a mortgage of sundry articles of household furniture, running to the ward, (the consideration of which was stated to be $500,) for securing the payment of a note of said Irish, for the sum of $1304,67, payable to said ward, and that said mortgage was witnessed by Daniel C. Emery, one of the sureties ; *that* said Emery certified on the 11th of June, 1838, that the said Irish appeared before him and acknowledged said mortgage *to* be his free act and deed; *that* said ward never actually received any of the mortgaged property ; *that* no person was present at the adjustment of said guardianship account; *that* the said ward was not apprised of the insolvency of her said guardian at the time of the settlement of his account, nor till long after the giving of the new note, in December, 1841 ; *that* the said Emery knew that the said Irish had given the note of Dec. 1841 ; *that* he proposed to said ward that she should take a new mortgage of said Irish's furniture, to secure the same in part, and *that* said Emery knew, at the times said guardian made said two notes, that said guardian was wholly insolvent, and unable to pay said notes, and did not disclose such fact to said ward. From all which the plaintiff contended, that said Harriet never ratified said proceeding, in taking and renewing said note.

WELLS, J., who presided at the trial, directed a nonsuit, which is to be taken off, if it was improperly ordered.

*J. Goodenow,* for the plaintiff.

When the condition of a probate bond has been broken, the judgment thereupon " shall be entered in common form for the penalty." R. S. c. 113, § 13 ; c. 115, § 78.

1. The neglect for three years to settle a guardianship account was a breach of the bond. R. S. c. 110, § 27 and 28 ; R. S. c. 113, § 17 and 20.

This action is therefore maintainable. Though the Probate

Court may settle such an account after the three years, yet that neglect must stand as a breach of the bond.

Where there has been a breach, a citation is not a necessary preliminary to a suit on the bond. *Potter* v. *Titcomb*, 1 Fairf. 64; 2 Fairf. 168.

2. The bond was broken, because there was not a faithful discharge of the trust. The guardian expended his ward's money, and substituted for it only his own note, which was but the note of an insolvent man. Such a proceeding was waste. 2 Story's Eq. p. 513 and 515.

3. The failure to pay over in money the balance to the ward, upon her arriving at full age, was another breach of the bond. R. S. c. 110, § 15. His own note was not money.

Her certificate that the account was correct, was but an expression that she found the debt side correct, in relation to the items there charged for her maintenance and education.

The taking of the note, by the ward, was no discharge of the liability on the bond. Between persons standing in such fiduciary relations, *uberrima fides* is required. 2 Kent's Com. 483, note b.

In transactions between a guardian and ward, after the minority has ceased, if the intermediate period be short, the former relation may be considered as still subsisting. 1 Story's Eq. 312, 313, 314 and 315.

The presumption of law in this State, that the acceptance of a negotiable note is payment of a pre-existing debt, may be rebutted by evidence. This evidence may consist of circumstances which show a different intent. *Butts* v. *Dean*, 2 Metc. 76; *Reed* v. *Upton*, 10 Pick. 524; *Whitcomb* v. *Williams*, 4 Pick. 230; *Fowler* v. *Bush*, 21 Pick. 230; Story on Notes, 107. What the intent of the parties was, is for the jury. 2 Greenl. Ev. 425.

That rule applies only to notes given for *simple contract* debts. Specialties are not within it. A note is merged in a bond. Is a bond also merged in a note?

The ward is not bound by her consent to take the note, if induced so to do by the suppression of a material fact. *Saf-*

*ford* v. *Bacon*, 1 Hill, 532. An accord without satisfaction is of no avail. Was the guardian under any higher obligation to pay by reason of his note ? What was the new consideration ? A promise to pay a debt, secured by an instrument of a higher nature, is void. *5 Cowen, 195.*

This claim is not barred by the settlement made in the Probate Court, because there was no notice to the ward. 11 Mass. 507; 17 Mass. 90; Cowen & Hill's Notes to Phil. on Ev. part 2, page 868.

Whether proceedings in the Probate Court, after the ward's minority had ceased, could affect her rights, is matter of some doubt, as the probate jurisdiction is limited to persons under guardianship.

If the first note was not a payment, the renewal of it could not be. *Pomroy* v. *Rice*, 16 Pick. 22 ; 9 B. & C. 418.

If the guardian, at the giving of the note was insolvent, the sureties are placed in no worse condition, by being held on the bond.

*Shepley* and *Dana*, for the defendant Emery, one of the sureties.

The plaintiff's attempt to set aside the decree of the Probate Court, because the guardianship account was fraudulent, is but an attempt, in a collateral suit, to impeach the decree, for matters not apparent on the record. If aggrieved, the only remedy for a party, in such a case, is by appeal, or by writ of error, or by application for a new trial. *Goodrich* v. *Thompson*, 4 Day, 215.

" The decree of a Court of Probate, if not reversed nor appealed from, cannot be questioned in a collateral suit, unless fraud is *clearly shown*, or there is a defect plainly apparent on the face of its proceedings." *Allen* v. *Lyons*, 2 Wash. C. C. R. 475 ; *Blount* v. *Durach*, 2 Wash. C. C. R. 657 ; 14 S. & R. 184, n. ; *President*, &c. v. *Groff*, *ib.* 181 ; *McPherson* v. *Cunliff*, 11 S. & R. 431 ; *Paine* v. *Stone*, 10 Pick. 76 ; *Brown* v. *Gibson*, 1 N. & M. 326 ; 2 Bailey, 60 ; 1 Bailey, 25.

The record shows the account to be closed. If it had been

unsatisfactory, the party should have surcharged and falsified ; or have had the sum, if any, which the guardian had misapplied, specifically fixed. *Ordinary* v. *McClure.* 1 Bailey, 7. A guardian is not liable on his bond, till he has been cited by the Judge of Probate to account, and has refused, 1 Root, 51 ; or till a specific sum has been decreed to be paid over. 3 McCord, 237.

If necessary that the ward should be notified that the account was in the Probate Court for settlement, this court will presume it was done. *Tryon* v. *Trion*, 16 Verm. 313.

Such notice could have availed nothing to the ward. She had settled and discharged the account before.

The taking of the note and mortgage, and her subsequent conduct in renewing the note and receiving payments upon it, discharged the sureties.

If the bond was broken, by the three years neglect to settle an account, the breach was but nominal, and it was healed by the subsequent settlement. 8 Pick. 394.

If the giving of a note by the guardian, instead of paying money, was a breach, it was competent for the ward, after the breach, to discharge the sureties in the bond. This was done by the renewal of the note. 13 Wendell, 75 ; Chitty on Contracts, 6th Am. Ed. 113, n.

The extension of the pay-day was a discharge of the surety. He was thereby induced to neglect the means of securing himself.

*Deblois* and *J. Goodenow*, in reply.

The plaintiff does not attempt to set aside the decree of the Probate Court. He rather insists upon its validity. We spread the whole record before the court, in order to enforce the decree, which shows that there is money, belonging to the ward, in the hands of the guardian. For the note which he gave was not a payment.

The decree does not affirm that the guardian had performed his duties, or that he had paid the money, or that the sureties are discharged. The decree was just, but the defendants have not complied with it. It is a judgment in favor of the

plaintiff, and the note is but further evidence of its amount. In substance, it was only striking a balance to be carried to new account. The partial payments indorsed, are merely receipts for certain sums paid upon the judgment.

Here was no forbearance to collect the debt of the guardian, for he was insolvent. The surety cannot, therefore, have been injured.

TENNEY, J. — Every guardian is required to render and settle his account with the Judge of Probate, once in three years, and as much oftener as the Judge shall cite him for that purpose. And on the neglect to do so, the condition of the bond, which he is obliged to give to the Judge, is deemed to be broken, and he exposed to removal from his trust. Stat. of 1830, c. 470, § 10; R. S. c. 110, § 27 and 28. The bond to be given, is conditioned among other things, that he render a just and true account of his guardianship as often as and when by law required, and at the expiration of his trust, to pay and deliver over all moneys and property, which on a final and just settlement of his accounts, shall appear to be remaining in his hands. Stat. of 1830, c. 470, § 11; R. S. c. 110, § 15.

The duties of a guardian in many respects are similar to those of an administrator, and the bonds required of one and the other are also substantially the same, so far as their duties are analogous. The principles, which have been judicially settled touching the legal obligations of an administrator, will apply to the like obligations of a guardian. When an administrator has received personal property of an intestate, and shall not have exhibited upon oath a particular inventory thereof, and in all other cases of neglect or mismanagement, execution shall be awarded against him, for such part of the penalty of his bond, as may be adjudged on a trial in due course of law. Stat. of 1821, c. 51, § 72; R. S. c. 113, § 17. When not otherwise provided by law expressly, like proceedings, judgment and execution, so far as applicable, shall be had upon the bonds of guardians, and others, as is

provided in reference to bonds of administrators, in common cases. Stat. 1821, $ 71 and 74; R. S. c. 113, $ 19. The privilege is secured to the guardian to have his accounts with his ward settled by the Judge of Probate; and the administrator has the like privilege in relation to his accounts with the estate of which he has charge.

It is the peculiar province of the Judge of Probate to take care, that guardians render accounts with their wards as frequently as the law requires, and also whenever he supposes, that it may be for the interest of wards. He has a supervision over the pecuniary affairs of minors, they having no others, who can be legally called upon to look after and protect their rights against their guardians. It is his duty to examine guardians' accounts rendered to him, and adjudicate thereupon. If the guardian is aggrieved at any decree of the Judge of Probate, he can appeal to the Supreme Court of Probate. The same right of appeal is open to the ward, when a decree is made after his arrival at full age, and before that time through his guardian, from a decree upon an account of a former guardian, who has resigned or been removed. No other tribunal than a Court of Probate is competent to pass upon accounts of guardians, which have been duly rendered.

In *Jennison* v. *Hapgood*, 7 Pick. 1, it was held, that a party aggrieved by a settlement before the Judge of Probate of an administration account, must appeal, or if the proceedings might be treated as a nullity on account of fraud, the executor might be cited to account in the Probate Court.

In *Robbins, Judge,* v. *Hayward*, 16 Mass. 524, it is said by the Court, " He [the administrator,] is entitled to have his accounts first settled in the probate office. If a balance appear against him, and he do not pay over according to the decree of the Judge, his bond will be put in suit."

" The question of fraud in an executor's account cannot be tried collaterally. The Probate Court is the proper forum for settling the account. If the party aggrieved by the fraud is aware of it, at the time, when the account is allowed, he may appeal; and if he is not, he may cite the administrator to re-

settle the account and allege the fraud. *Paine* v. *Stone*, 10 Pick. 75.

This suit is upon a bond given to the Judge of Probate by James Irish, upon his appointment as the guardian of Harriet M. Mason, and the other defendants, as his sureties, on May 7, 1833. The bond is conformable to the requirements of the statute, and in its condition obliges the guardian to render an account once in three years, and to pay and deliver over all balances and sums of money, that shall be found remaining upon his account, the same being first examined and allowed by the Judge of Probate, for the time being, unto the said minors. The defendants pleaded a general performance of the condition of the bond. The plaintiff joins issue and sets out an assignment of the breaches upon which reliance is placed. — 1st, That on June 7, 1838, when Harriet M. Mason arrived at the age of twenty-one years, there was due to her from her guardian the sum of $1304,67, which he has not paid to his ward, though duly requested, but has fraudulently wasted and converted the same to his own use; and 2d, that the guardian did not render an account of his guardianship, as by law required, once in three years, and that the omission did not arise from sickness or other unavoidable accident.

The plaintiff contends, that by the settlement of the account rendered to the Judge of Probate, there is a balance found in the hands of the guardian, which has never been paid; that the decree of the Judge cannot properly apply to the charge of the note given for the balance, but only to the several credits therein, to the ward, and the charges against her, for disbursements in cash for her benefit, the articles furnished and the services performed for her, as contained in the account; that the Judge, having no authority to allow a payment upon the final settlement in any other manner than in money, the charge of the note is to be treated as a credit of that amount of cash, in the guardian's hands. It is denied that the ward intended to receive the note in discharge of the balance, or to exonerate the guardian or his sureties from their

former liability on the bond. It is further insisted, that the proceedings on the guardianship account, were fraudulent ; and that the sureties consented to those proceedings, and therefore, were equally implicated in the fraud, with the guardian himself. And for the purpose of establishing the fraud charged, certain facts were offered to be proved ; which was not permitted by the presiding Judge, who directed a nonsuit.

It is not contended on the part of the plaintiff, that he has the right to impeach or overhaul the decree of the Judge of Probate in this suit, but it is attempted to be maintained, that there was a balance found in the settlement, and that under the account as presented, and the facts offered in evidence, the action can be sustained.

The guardian presented his account, which was examined and allowed at a Probate Court, holden on the first Tuesday of September, 1839. The same account was prepared and exhibited to the ward, immediately on her arriving at the age of twenty-one years, on June 7, 1838, and she at the same time signed a memorandum in writing, in which she acknowledged that she had examined the account, found it correct, and consented and agreed to its allowance. The note is charged in that account, and she is supposed to have received it, in the same manner, that she received any other article in the account.

The adjudication of the Judge was upon a subject matter, over which he had general jurisdiction, and after the account was presented by the guardian, the juirsdiction over it, so far as the same was to be examined and allowed or disallowed, was exclusive in him. If all the proceedings were conformable to the provisions of the statute, the decree, not being appealed from, was binding upon the parties, so long as it should stand unreversed. Whatever was embraced in the account was a subject of that decree, and by it, was legally established. If the account contained any item, which the law would not authorize the guardian to make, or the Judge to allow, yet if the consideration of it fell within his jurisdiction, the allowance would be binding, if no appeal was taken from the

decree. After the adjudication, no appeal being claimed, the account has passed into a judgment of a court of competent jurisdiction.

The charge of a negotiable note of the guardian, for the amount of the balance in his hands, belonging to the ward, made the subject of the decree, cannot be regarded merely as credit of the amount in money. The note was received more than a year before the allowance of the charge therefor, and might have become obligatory upon the guardian by negotiation, even if he had been required to pay the same balance in money. It must have been understood by the Judge as something more than the simple acknowledgment, that he held this balance. He treated it as he did any other charge in the account, and the allowance, even if the Judge mistook his duty in relation to it, will equally apply to this charge.

If the ward admitted the account to be correct, and consented to be bound by it; and if she received the note after such consent, through imposition and fraud practiced upon her by the guardian, and the allowance was decreed before she was apprised of the fraud, so that she was prevented thereby from taking an appeal, the guardian is still entitled to have these questions of fraud tried and settled by the proper tribunal; and as we have seen, he should have been cited to appear before the Court of Probate, for the purpose of re-settlement of his account, when the whole subject could have been opened and examined.

But it is objected, that it does not appear, from the copies of the proceedings in probate, that the ward was notified to be present at the court, when the guardian's account was examined and allowed, and therefore she is not bound thereby. There being no evidence, that she was present at that time, or notified to be present at the hearing, it is perhaps inferrable, that the Judge, in making the decree, was influenced by her written admission, that the account was correct, and that she assented thereto. If it was necessary that she should have had notice, in order to make the decree effectual, and she was not notified, the decree becomes a nullity. But the guardian

having filed his account, which is admitted to be correct in all respects excepting in the charge of the note, he is entitled to have it examined, after proper notice shall have been ordered and given, and to require that it shall be adjudged in all its items, before a suit can be instituted and maintained upon the bond.

But was it necessary, that notice should have been given to the ward, to be present at the court, when the account was to have been examined, in order that the Judge should have jurisdiction to pass finally upon the account ? An administrator's account cannot be settled in probate, without reasonable notice to the parties interested. R. S. chap. 106, sect. 40. In a settlement of a guardian's account, the statute requires no notice to be given. The reason for the distinction is obvious, touching the settlement during the ward's minority. The notice would be immaterial. The ward is supposed incapable of action. It is the duty of the Judge of Probate to guard his rights, when the guardian is adversely interested. And when the settlement takes place after the majority of the ward, the Judge is not exonerated from a continued vigilance over his affairs. It is proper, however, that a ward, having the right to act in his own behalf, should be notified and heard. And it is believed, that such has been the practice by Courts of Probate generally. But the statute has not directed what notices shall be given by administrators in the settlement of their accounts, farther than it shall be reasonable. This is entrusted to the sound discretion of the Judge, in each case. When it appears to the Judge, that the ward has had full knowledge of the account, after he has arrived at full age, and has in writing assented to its correctness, upon an examination, it cannot be said with propriety, that the Judge has exceeded his power, in allowing the account. The notice, which can be of service to the ward, has been received, and she has virtually been heard, so far as is useful to him.

It is true, as contended by counsel for the plaintiff, that until the final settlement of the guardian's account, after the

ward has come to full age, if the intermediate time. be short, the relations between them may be regarded as subsisting ; still it is competent for the ward to act in his own behalf, and, if his acts afterwards have the sanction of the Judge of Probate, upon a full view of the whole subject, it would not be reasonable, that it should be revised collaterally.

Until the note of the guardian in this case was given, and received by the ward, he had the amount in his hands, which he was bound to pay in money, if demanded. It may have been unwise, that this right of the ward should have been waived, but if she really intended to receive the note, as payment, and in discharge of the sum in the guardian's hands, and she was not induced to do so, by any fraud practiced upon her, or by a concealment, or in ignorance of material facts, she would be legally bound. The claim, which she had against her guardian, was the sum of money in his hands. The bond, to the Judge of Probate, was, in its character, collateral security therefor. It might require clear evidence to satisfy the mind, that it was her intention to receive the note, as absolute payment of her claim, but if such intention was fully manifest to the Judge of Probate, the act cannot be treated as a nullity, in a suit like the present. In the cases referred to upon this point, by the plaintiff's counsel, the question presented was, what was the intention, in giving a negotiable note, when security existed in a specialty ? And no doubt was expressed if the design was to give and take the note, as payment of a sum due, although collaterally secured by an instrument of a higher nature, the transaction would be valid. *Fowler* v. *Bush*, 21 Pick. 230. We are to suppose that the Judge of Probate treated the matter as settled by the parties upon full consideration, and the decree is binding, till impeached in another mode than that attempted.

The failure of the guardian to render to the Judge of Probate his account for more than three years from the time of his appointment, was a breach of the bond. But no suit was commenced thereon till a long time subsequent to the settlement, which took place in the probate office, in September,

1839. The account which had been rendered, and then settled and allowed, purports to cover every thing arising under the guardianship, from its commencement, and was a final settlement between the parties. By the decree, all claim of the ward against the guardian, was discharged by the note, which was given and received. All damages accruing to the ward from previous breaches of the bond, are presumed to have been included in that settlement, or waived.

*Nonsuit to stand.*

NOTE. — HOWARD, J. having been of counsel in this case, took no part in its decision.