## SAMUEL CLARK *vs.* LEMUEL N. BLACKINGTON.

An averment in the record of proceedings in the probate court of another state that notice of such proceedings was given to all persons interested, is at least *prima facie* evidence of such notice.

An administrator in another state will be presumed to have authority by virtue of his office to sell a note and mortgage belonging to the estate, in the absence of evidence to the contrary.

An executor included in his inventory a note due to his testator from the estate of a deceased debtor who was domiciled in another state, secured by a mortgage on land in that state; and he took out administration in that state, sold the note and mortgage, and rendered a final account to the probate court of that state, which was there allowed. *Held*, that such allowance of the disposition made by him of the proceeds of the note was conclusive in the settlement of his account in the probate court here as executor; but that the probate court here could inquire into the good faith of the sale, and, if it should find that the sale was fraudulent, and the executor the real purchaser of the note, could compel him to account for the excess of the value of the note above what he paid for it.

APPEAL from the Probate Court, disallowing certain items in the account of the appellant, as executor of the will òf Catharine A. C. Blackington, the wife of the appellee. At the hearing, before *Gray*, J., the following facts appeared :

On December 19, 1863, the will of Catharine A. C. Blackington was proved, and letters testamentary issued, in this county, to the appellant. Among the property of the testatrix which came into the hands of the appellant in this Commonwealth was a promissory note of Samuel Clark, Sen., and a mortgage to the

testatrix of real estate and personal property in Rhode Island, to secure the payment of this note. All the property of Samuel Clark, Sen., was in Rhode Island, where he died insolvent, in August 1856, and this note had no value aside from the mortgage security. On January 3, 1865, the appellant returned an inventory of the estate of his testatrix to the Probate Court, the first two items in which were, "Samuel Clark's note, $1500;" "Interest on same, $847.50."

On November 26, 1864, a copy of the will, with the probate thereof in this county, was ordered to be filed and recorded by the Court of Probate, held at Smithfield, in the county of Providence, and State of Rhode Island, and letters of administration, with the will annexed, were issued to the appellant. The only evidence that notice was given of the application to the Rhode Island court was this recital in the record: "Notice having been duly given thereon, pursuant to law." The appellant was the clerk of the Rhode Island court. On January 26, 1865, the appellant, as administrator with the will annexed, filed an inventory in the Rhode Island court, consisting of the following items: "Note signed by Samuel Clark, $1500.00; furs, $3.00."

On January 28, 1865, the Rhode Island court passed the following order: "Decreed that Samuel Clark, administrator with the will annexed on the estate of Catharine A. C. Blackington, have leave to dispose, at public auction, of the mortgage note mentioned in her said inventory. Witness Samuel Clark, P. Clerk." No previous notice of this order, or of any application therefor, was published or given. The note and the mortgage were sold by public auction, on February 11, 1865, after notices published in the Providence Daily Journal, February 2 and 9, 1865. The appellee offered to prove "that this sale was for an inadequate consideration, and was by collusion and fraud between the appellant and the purchaser, the purchaser acting as agent of the appellant, and transferring the note and mortgage to the appellant, by whom they had been held ever since," and contended that the appellant should be held to account for the actual value thereof in this Commonwealth.

On June 24, 1865, the appellant rendered an account to the Probate Court in Rhode Island, charging himself with the amount of his inventory there, and crediting himself, among other things, with the following : E. H. Hazard's bill, $50.54; Abraham Payne's bill, $75.00; Christopher Robinson's bill, $15.00; Stephen Clark, $195.85 ; Samuel Clark, $254.00 ; loss on sale of mortgage note, $750.00. This account was allowed by that court, by an order containing this recital, " All persons interested in the settlement of said account having had legal notice." No other evidence of such notice was introduced.

The appellant rendered his account as executor in the Probate Court of this county, charging himself with the amount of the inventory, $2649.37, and crediting himself with several items, among which were the following : (6) E. H. Hazard's bill, 50.54; (7) Abraham Payne's bill, $75.00 ; (8) Christopher Robinson's bill, $15.00; (9) Stephen Clark, notes due from deceased, $197.85 ; (10) Samuel Clark, notes due from deceased, $254.10 ; (11) Loss on sale of note and mortgage, $750.00. " All the foregoing charges were incurred and settled in the Probate Court in Rhode Island." (19) " The note and mortgage appraised at $1500, and interest at $847.50, making $2347.50, in the inventory in this state, were sold for $750, making the loss $1597.50 ; but as $750 were credited as loss in the Rhode Island account, where the whole appraisal was but $1500, the balance, $847.50, should be now credited as part of the loss, $847.50." The items 6, 7, and 8, were for fees of counsel residing in Rhode Island, for services in a suit in equity, brought by creditors of Samuel Clark, Sen., against the testatrix, to set aside the mortgage. Stephen Clark and the appellant resided in Rhode Island. The judge of probate disallowed items 6, 7, 8, 9, 10, 11, and 19, and allowed the other items in the account.

The appellant contended that upon the items disallowed here the decree of the Court of Probate in Rhode Island, upon the account rendered there, was conclusive. The appellee contended that he was not bound by that decree, for the following reasons : " that the note and mortgage came into the hands of the executor in this Commonwealth ; that the executor, by his inventory

and account here, had submitted himself to the jurisdiction; that the note might have been sold by the executor in this Commonwealth, without any order of the Court of Probate in Rhode Island; that the record of that court was certified by the appellant, as clerk, when he was a party interested; that no notice had been given of the license granted by that court for the sale of the note; that the license included the note only, and not the mortgage; that no sufficient notice was given of the sale; that no sufficient notice was proved of the application for ancillary administration in Rhode Island; that no sufficient notice was proved of the presenting of the account in Rhode Island; and that the allowance by that court of the debts due to citizens of Rhode Island, and especially to the appellant himself, were subject to revision here, by showing that they never existed, or never bound the testatrix, or had been paid." The statutes of Rhode Island were put into the case.

The case was reserved for the determination of the full court; the decree to be reversed, in whole or in part; or the case to stand for further hearing, upon the question of fraud in the sale; or such other order or decree to be made therein as law and justice might require.

*W. Colburn*, for the appellant.

*W. A. Field*, for the appellee, to the point that there was no evidence that the necessary notices had been given, cited *Jenks* v. *Howland*, 3 Gray, 536; *Peters* v. *Peters*, 8 Cush. 529, 543; *Carleton* v. *Bickford*, 13 Gray, 591; *Hendrick* v. *Whittemore*, 105 Mass. 23, and cases cited; *Ewer* v. *Coffin*, 1 Cush. 24; *Hathaway* v. *Clark*, 5 Pick. 490; *Abbott* v. *Bradstreet*, 3 Allen, 587; *Parcher* v. *Bussell*, 11 Cush. 107; *Loring* v. *Steineman*, 1 Met. 204; Rev. Sts. of R. I. *c*. 152, §§ 2, 4, 5; *c*. 157, § 9; *c*. 162, § 5; *cc*. 33, 151, 153.

WELLS, J. The domicil of the testatrix being in this Commonwealth, the final and full settlement of the estate is to be made here. The executor "must be held to account here for the whole of the personal property and effects which have come to his hands, wherever found, or by whatever means collected." *Jennison* v. *Hapgood*, 10 Pick. 77, 100. If he has a surplus in

his hands arising out of the administration of the testator's goods and estate in Rhode Island, after paying the expenses of administration and discharging his own liabilities there, " he is accountable for it here in the same manner as he would be if another had been appointed administrator, and had paid over a balance." Ib.

The executor in this case, in order to have his account allowed with such credits as to discharge him from further responsibility for the note which came into his hands as executor, must show that he has disposed of it and appropriated the proceeds in a legal and proper manner in the settlement of the estate of the testatrix.

As the maker of the note was domiciled in Rhode Island at his decease, and the property, from which alone payment could be enforced, was situated there, it was proper, if not necessary, to take ancillary administration there. The probate courts of that state had full and complete jurisdiction for the sale of the note and the property held as security, and for the allowance of the accounts pertaining to the administration there. *Jennison* v. *Hapgood*, 10 Pick. 77. *Stevens* v. *Gaylord*, 11 Mass. 256.

Assuming, in the first place, the proceedings in Rhode Island to be regular and valid under the laws of that state, and the sale of the note to have been absolute, the executor would be fully protected thereby, and would be answerable here only for the balance of proceeds remaining in his hands. Claims due in Rhode Island, allowed by the Probate Court there, and paid in good faith out of the assets subject to that jurisdiction, are not open to reinvestigation here. But the adjudication affects only the assets there ; and if the claim itself is presented for allowance _n the courts of this state, the foreign adjudication upon it is not held to be binding. *Ela* v. *Edwards*, 13 Allen, 48.

In the account before us the executor asks to be allowed for payment of certain specified claims due from the deceased in Rhode Island, and for loss on sale of note and mortgage, as charges " incurred and settled in the Probate Court in Rhode Island." These claims were disallowed ; and the question presented to us upon the report is not as to the merits of the specific claims, but

whether the Probate Court in Massachusetts was concluded by the settlement of the account in Rhode Island, Although the separate items of the charges in Rhode Island are brought into the account here, yet we think it appears from the whole statement, and should so be regarded by the court, that the purpose of the accountant was to bring into his account here the net result or balance of the settlement in Rhode Island.

From considerations already suggested, it follows that if the proceedings in Rhode Island were regular and valid, the settlement in that state is conclusive to the extent of the assets there received and accounted for. But it will not establish any claim in favor of the executor, as against any assets for which he may properly be held accountable in this state. *Ela* v. *Edwards*, 13 Allen, 48.

The objection made to the proceedings in Rhode Island is that they were had without due notice to parties interested. The record of the original proceedings, by which a copy of the will was ordered to be filed and recorded, and the appellant received letters of administration in Rhode Island, has the recital, " Notice having been duly given thereon, pursuant to law." And the order allowing the account recited as follows : " All persons interested in the settlement of said account having had legal notice."

Such recitals are not conclusive, it is true, where the jurisdiction of the foreign court depends upon the fact of notice. *Carleton* v. *Bickford*, 13 Gray, 591. If the same rule applies where the jurisdiction exists, but the notice is necessary to the regularity and validity of the proceedings by the *lex fori*, still the burden of impeaching them for that cause must rest upon the party asserting their invalidity.

It appears that the order giving leave to dispose of the mortgage note at public auction was made without notice ; and that the only evidence of such order consists in a record attested by the executor himself, as clerk of the court granting it. If we adopt the position of the appellee, that for these or either of these reasons the order, under the laws of Rhode Island, is without legal force, yet it does not follow that the sale was without effect. By the general rule of law, an executor has authority, by virtue

of his office, to transfer notes due to his testator, and the securities held for their payment. Such is the law of Massachusetts; and we are referred to no statute or decision of the courts of Rhode Island to show that it is otherwise there. We think the provisions of statute to which we are referred are directory merely, and that a non-compliance therewith may affect the extent of the accountability of the executor for the property sold or the proceeds of sale, but not the validity of the sale itself, if made in good faith and otherwise unobjectionable.

The note, then, having been sold in Rhode Island, and a final account afterwards settled there, upon due notice, all matters brought into that account are adjusted legally and finally. The whole proceeds of the sale of the note, as reported to the court in Rhode Island, have been appropriated to the payment of debts and expenses due and incurred in that state. The decree of the Probate Court, disallowing items 6, 7, 8, 9 and 10 of the account rendered in this state, must therefore be reversed. Those items must stand, not as specific credits for claims adjusted in Massachusetts, but as representing the extent to which the assets, with which the executor has charged himself upon the other side of the account, have been appropriated and disposed of by the foreign tribunal. For the same reason he should have credit, in any event, for so much of item 11 as may be covered by the assets accounted for in Rhode Island. He should have credit for the whole of item 11, and also item 19, the two making up the whole loss on sale of the note and mortgage, as shown by the difference between the amount of proceeds of sale in Rhode Island, and the sum of the principal and interest of the note, with which he charges himself in his account in this state, unless he is chargeable here on account of that note and mortgage upon some other ground than accountability for the proceeds of the sale. If that sale was an absolute one, his responsibility is at an end; and the settlement of his account in Rhode Island closes the matter.

But if, as the appellee contends and offered to prove, the sale of the note and mortgage " was by collusion and fraud between the appellant and the purchaser, the purchaser acting as agent of the appellant, and transferring the note and mortgage to the

appellant, by whom they had been held ever since," then the settlement of his account for the proceeds of such sale, not assented to by the appellee, does not exonerate the appellant from further responsibility. One who, in executing an authority to sell, becomes himself the purchaser, either directly or indirectly, may always be treated by the parties in interest as having purchased for their benefit, if they elect so to do within a reasonable time after knowledge of the facts. No principle of law is better settled or more salutary than this. *Litchfield* v. *Cudworth*, 15 Pick. 23. *Yeackel* v. *Litchfield*, 13 Allen, 417.

If the note and mortgage came into the hands of the executor by means of his sale thereof, and he has made any gain therefrom ; or if they are of greater value in his hands than the $750 for which he has accounted in Rhode Island, the appellee is entitled to the benefit thereof, and may require him to account for the same in the fulfilment of his trust as executor. This responsibility is not touched by the settlement of his account in Rhode Island.

Whether the questions arising from this ground of liability could be presented and tried in Rhode Island, if the parties interested should not choose to go there to call the administrator to further account ; and what would be the effect here of an adjudication made there, *ex parte*, we need not consider. If the auxiliary administrator and purchaser of the note had been another than the executor, the appellee might have been compelled to seek his redress in the forum of the ancillary administration. But this executor, although not responsible here for what he has done as administrator in Rhode Island by way of administration there under the authority and with the sanction of the proper courts, yet is responsible for all property in his hands to which a trust attaches in favor of the estate of which he is executor, unless he has already accounted for it, or it is within the exclusive jurisdiction of some other tribunal. The forum of original administration is the one in which the final account is to be made. As executor in this state, his trust embraced this note. Its sale in Rhode Island does not discharge him of that trust, because he is himself the purchaser, and the party interested elects to treat

him as purchaser in trust. The account in Rhode Island càn discharge him only to the extent of the sale and its proceeds returned there.

Whether the fact and extent of such further liability is a matter to be tried and determined ultimately here or in Rhode Island, his final account here cannot be allowed, with credits fully discharging him, until that matter has been adjudicated. Upon the presentation of this account here for allowance, the fact of such further liability is necessarily involved, and must be determined before any decree can be reached. We think the extent of that liability also not only may, but must be tried here. If the allegations of the appellee are sustained so far as to establish that the executor himself became the purchaser of the note and mortgage, directly or indirectly, then he should be required to account for all benefit derived or derivable therefrom, over and above $750, and his charges for loss on sale of the same should be reduced accordingly. *Case to stand for hearing.*