# NEWPORT COUNTY.

### Elizabeth P. Hall *vs.* Asa B. Anthony *et al.*

Under Gen. Stat. R. I. cap. 168, § 9; cap. 179, §§ 1, 7, 10, Courts of Probate have full jurisdiction to settle the accounts of executors and administrators appointed by them. Such settlement involves the examination, verification, and correction of the items on both the credit side of the account and the debit.

If the Probate Court, having full jurisdiction, errs in exercising it by wrongfully allowing or rejecting items, the remedy is by appeal, and the decree of the Probate Court, if not appealed from, is conclusive in the absence of fraud, and if the proper notices have been given.

Hence, when a bill in equity was filed to reopen an administrator's account which had been approved by the Court of Probate without appeal,

*Query,* whether such a bill could ever be maintained, as the remedy at law, original and appellate, is adequate.

*Held,* that if such a bill could ever be maintained, it could not be in favor of one who, uninfluenced by fraud or mistake, had allowed the Probate Court to approve the account without objection and appeal.

BILL IN EQUITY to review an administrator's account, to annul a judgment at law, and for an injunction.

*Providence, February* 12, 1881. DURFEE, C. J. This is a suit in equity by the mother of the late James D. Hall, of Portsmouth, deceased, against the administrator on his estate, for the purpose, among other things, of having a decree of the Court of Probate of Portsmouth allowing an administration account of the defendant set aside, on the ground that the account contains charges against the estate which the court had no jurisdiction either to settle or allow. James D. Hall died May 31, 1875. Previous to his death, in the fall of 1874, he had decided to build a small house on a five-acre lot which he owned in Portsmouth, and commenced preparations for its erection. He was, however, stricken with insanity, and obliged to suspend action until the spring of 1875, being, meanwhile, in the Butler Hospital. In the spring of 1875, being much improved, he raised $2,500 by mortgage, and put it in the hands of the defendant, as his agent, to use in the erection of the house, which was expected to cost about $2,000. The house had been begun and considerable ex-

pense, from $1,000 to $1,500, incurred on account of it, when the said James died; and the bill alleges that the defendant went on with the work on the house, notwithstanding the death of James, expressly engaging, however, that the house should not cost over $2,500. The defendant was appointed administrator June 21, 1875. The bill alleges that the cost of the house very much exceeded $2,500. The defendant rendered his first administration account in June, 1876. It contained numerous charges for moneys expended on account of the house after the death of the intestate. The account including these charges was allowed July 10, 1876. The complainant, who was present, did not make any objection to the allowance, and did not afterwards take any appeal.

The defendant in his answer sets up that he went on with the house, after consulting the complainant and the other next of kin, with their approval. We think the evidence supports this statement, though the complainant and next of kin may have supposed, when they gave their approval, that the house was not to cost over $2,500.

The defendant contends that the decree of the Court of Probate allowing his account, not having been appealed from, is final and conclusive. The complainant contends that the court had no jurisdiction over the charges for moneys expended on the house after the death of the intestate; and that therefore its decree allowing them is *pro tanto* a nullity. She cites *Jones* v. *Coon*, 13 Miss. 751, in which it was decided that charges by an administrator, for the board and maintenance of the infant heirs, contained in his administration account, was not within the jurisdiction of the Probate Court, and that the decree allowing them was void. The case was a peculiar one, and it differs from the case at bar in that the charges impugned were far more clearly unauthorized, for there are cases in which it is proper for an administrator to finish a work begun by his intestate. *Newton* v. *Poole*, 12 Leigh, 113; *Marshall* v. *Broadhurst*, 1 Cromp. & J. 403, 405; also 1 Tyrw. 348. The case, however, is not without pertinency as an authority, in so far as the Mississippi statute is like ours. A comparison of the two statutes shows that ours is much the more explicit and significant.

Our statutes, conferring or recognizing the jurisdiction, are very comprehensive. In Gen. Stat. R. I. cap. 168, § 9, the language is, " Such courts (*i. e.* the Probate Courts) may and shall examine, allow, and settle the accounts of executors, administrators, and guardians by them appointed." In cap. 179, § 1, the language is, " Every executor and administrator shall make out and return to the Court of Probate, yearly, and in every year, his account relative to the estate in his hands, with a statement of the liquidated balance that may be due to or from him." And in the same chapter, § 7, it is declared, that " executors and administrators shall be allowed, in their accounts, all reasonable charges and disbursements which they shall lay out and expend in the funeral of the deceased and other their administration." And in § 10, that " The settlement of the accounts of any executor or administrator by the Court of Probate, or, in case of appeal, by the Supreme Court, shall be final and conclusive on all parties concerned therein, and shall not be subject to reëxamination in any way or manner whatsoever."

We think it is apparent from these provisions that the account of the executor or administrator, relative to the estate in his hands, is the subject matter over which jurisdiction is conferred. When, therefore, the account has been rendered to the proper court, and the regular notices to all persons interested have been duly served or published, the jurisdiction is complete, and the decree settling the account is, in the absence of fraud or manifest mistake, conclusive unless appealed from. Freeman on Judgments, § 319 *a; Pratt* v. *Northam,* 5 Mason, 95 ; *Mallett* v. *Dexter,* 1 Curtis, 178 ; *Sherman* v. *Chase,* 9 R. I. 166.

Such an account ordinarily has a credit and a debit side. The credit side shows the amount which the administrator is accountable for, and the debit side his charges against it. To settle the account is to examine, verify, and correct these items and determine the balance between them. If the debit side contains charges for expenditures of a kind which is unauthorized, the court, in settling the account, must either allow or disallow them, and therefore, whichever it does, it is equally in the exercise of its jurisdiction, though it may exercise it erroneously in the one

case and correctly in the other. In either case, therefore, its decree will be valid unless appealed from. *Rhoad's Appeal*, 39 Pa. St. 186 ; *Sparhawk* v. *Buell*, 9 Vt. 41, 78 ; *Hall* v. *Grovier*, 25 Mich. 428 ; *Clark* v. *Blackington*, 110 Mass. 369, 375 ; *Pierce* v. *Irish*, 31 Me. 254, 257.

It is not unusual for an administrator, pending the settlement, to pay the taxes as well on the real as on the personal property, or to pay for necessary repairs on the real, or to make advances out of the assets to the next of kin, or to divide portions of the assets *in specie* in anticipation of the order of distribution, and then make his charges accordingly and have them allowed. All this is doubtless irregular, but it is often convenient for all concerned, and, so long as the debts are duly paid, not specially reprehensible. It would, however, be exceedingly mischievous, if, years after the assets had been so used and accounted for, on occasion it may be of some family quarrel, the administrator could be required to account for them again, on the ground that the previous settlement was extra-jurisdictional and void. Our Courts of Probate are domestic tribunals, constituted generally of men of good sense, not learned in the law. They do many things loosely, as among neighbors, yet with good practical results. It must be presumed that the General Assembly has always been familiar with their modes of proceeding, and consequently that, when it conferred the jurisdiction so unrestrictedly, and provided that their settlements should not be reëxaminable, it did so having their modes of proceeding in mind, and intending, nevertheless, that their decrees should be conclusive unless appealed from. It doubtless considered the appeal a sufficient safeguard and remedy.

The case at bar, moreover, is a suit in equity. It is doubtful if such a suit in equity is ever maintainable, the remedy in the Probate Courts, original and appellate, being entirely adequate, as is apparent from the case of *Jones* v. *Coon*, 13 Miss. 751, above cited. But if the suit is ever maintainable, it certainly ought not to be maintained in favor of a person who has consented to the proceeding complained of, unless the consent was procured by fraud or mistake.

This suit must be dismissed ; the jurisdiction having existed, though it may have been erroneously exercised.

*Decree accordingly.*

*A. & A. D. Payne, Samuel R. Honey,* and *Charles Staples,* for complainants.

*William P. Sheffield & Francis W. Miner,* for respondents.