## *In re* GROVER'S ESTATE.

### McKAY *v.* CONGREGATIONAL HOME MISSIONARY SOCIETY.

1. EXECUTORS AND ADMINISTRATORS — FINAL ACCOUNT — DUTY OF CIRCUIT COURT TO SETTLE ACCOUNT IN CONTROVERSY ON APPEAL.
    When an appeal is taken from the allowance of an executor's account, under 3 Comp. Laws 1915, § 14163, it

is the duty of the circuit court to settle the account in controversy.[1]

2. SAME—DUTY OF SUPREME COURT TO DETERMINE WHETHER FINDINGS SUPPORTED BY EVIDENCE.

On review of allowance of executor's final account in the Supreme Court, by writ of error, when the findings of fact and conclusions of law are properly assailed by proposed amendments and exceptions, it is the duty of this court to determine whether the conclusions reached as to the allowance or disallowance of items are supported by the findings, and whether the findings are supported by the evidence.[2]

3. SAME—EXECUTOR CHARGEABLE WITH INTEREST.

Where, in proceedings for the allowance of executor's final account, the probate court charged the executor only three per cent. upon $10,000 belonging to the estate which he carried in a commercial account in a bank of which he was a director and cashier, the circuit court, on appeal, properly increased the interest charge to four per cent. on a showing that said bank paid four per cent. semiannually on savings deposits.[3]

4. SAME—INTEREST ON LEGACIES NOT ALLOWABLE WHERE PAYMENT UNDULY DELAYED.

Where delay in making payment of legacies was not satisfactorily accounted for, the circuit court properly reduced the amount allowed the executor for interest paid on legacies from $979.80 to $317.10.[4]

5. SAME—ATTORNEY'S FEES ALLOWABLE BY PROBATE COURT WHEN NECESSARY.

Although there is no statute expressly authorizing an executor to employ an attorney to assist him in administering an estate, under 3 Comp. Laws 1915, § 14117, the probate court may allow the charges of an attorney when one has been employed, and "when necessary services are involved in the settlement of an estate."[5]

6. SAME—ATTORNEY'S FEES FOR SERVICES RENDERED PRIOR TO PROBATING WILL NOT ALLOWABLE IN ABSENCE OF CONTEST.

Expenses for services of an attorney incurred by an executor prior to and on the date the order of probate was

[1]Executors and Administrators, 24 C. J. § 2524; [2]Id., 24 C. J. § 2521 (Anno); [3]Id., 24 C. J. §§ 496, 508; [4]Id., 24 C. J. § 2393 (Anno); [5]Id., 24 C. J. §§ 530, 2393.

made, are not allowable, where there were no exceptional circumstances and no notice of contest had been filed.[6]

7. SAME—ATTORNEY'S FEE FOR FILING DISCLOSURE IN GARNISHMENT.

Where the legacy of one of the executors was garnished in the Federal court, and the only duty in relation thereto resting on the executors was to file a disclosure, an allowance of an attorney's fee of $125 for such service should be reduced to $25.[7]

8. SAME—ATTORNEY'S FEES IN SUIT FOR CONSTRUCTION OF WILL AND TO DEFEND VALIDITY OF WILL ALLOWABLE.

Where the legality of the bequest to, and the identity of, the residuary legatee were questioned, and the executors filed a bill for construction of the will, they were entitled to a reasonable allowance for attorney's services in connection therewith, especially in view of the fact that the heirs, by cross-bill, attacked the validity of the will itself, which it was the executor's duty to defend.[8]

9. SAME—ATTORNEY'S FEES SHOULD BE ALLOWED BY PROBATE COURT —PAYMENT OF UNAUTHORIZED BILLS.

Although the attorneys have been paid almost in full for their services, the Supreme Court must consider their bills as if they had been presented to the probate court for allowance, since the executors had no authority to pay them until authorized to do so by the court.[9]

10. SAME—REASONABLENESS OF ATTORNEY'S FEES—BURDEN OF PROOF ON EXECUTORS WHERE PAYMENT UNAUTHORIZED.

Where the executors paid attorney's fees without authority from the probate court, the burden is cast on them, on appeal from the allowance of their final account, to satisfy the court that the services rendered were necessary in the administration of the estate, and that the charges therefor were reasonable in amount.[10]

11. SAME—ATTORNEY'S FEES—FINDING OF CIRCUIT COURT NOT SUPPORTED—AMOUNT FIXED IN SUPREME COURT.

Although there is a paucity of proof as to the service rendered by the attorneys and what would be a fair charge therefor, and there is no evidence to support the finding of the circuit court that $250 is a reasonable amount, but

[6]Executors and Administrators, 24 C. J. § 536; [7]Id., 24 C. J. § 542; [8]Id., 24 C. J. §§ 536, 540; [9]Id., 24 C. J. § 533; [10]Id., 24 C. J. §§ 532, 542, 2472.

there is some proof thereon, the Supreme Court fixes the amount allowable therefor at $2,000, not including the charge for making the final account, to which is added the disbursements charged. for, amounting to $69.96.[11]

12. SAME—ATTORNEY'S FEE FOR PREPARING FINAL ACCOUNT.

Where the attorney would have had little difficulty in preparing the executor's final account had the accounts been kept in proper shape, there is no injustice to the executor in reducing the allowance for the attorney's services therefor from $500 to $100.[12]

13. SAME—EXTRAORDINARY SERVICES—EVIDENCE—SUFFICIENCY.

Where one of the executors, who lived in another State and was also a legatee, was allowed $1,985.42 for extraordinary services by the probate court, but the proofs fail to show any extraordinary services except three trips to Michigan, the circuit court properly reduced the allowance to $141.30.[13]

14. SAME—DISCRETION OF COURT FAIRLY EXERCISED IN REDUCING ALLOWANCE FOR EXTRAORDINARY SERVICES.

Where the resident executor was allowed $1,639.92 for extraordinary services by the probate court, but the record supports the finding of the circuit court that he was neglectful of his duties, and the proof as to such extraordinary services is unsatisfactory, it cannot be said that the discretion of the circuit court in reducing said allowance to $125 was not fairly exercised.[14]

Error to Macomb; Widdis (Albert), J., presiding. Submitted October 14, 1925.   (Docket No. 73.)   Decided January 28, 1926.

Henry J. McKay presented his final account as executor of the last will of Melita C. Grover, deceased. The account was allowed in the probate court, and the Congregational Home Missionary Society, residuary legatee, appealed to the circuit court.   Judgment disallowing items in the account.   The executor brings error.   Modified and affirmed.

[11]Executors and Administrators, 24 C. J. § 542; [12]Id., 24 C. J. §§ 542, 2529; [13]Id., 24 C. J. § 2423; [14]Id., 24 C. J. § 2423.

*Lungerhausen, Weeks & Lungerhausen,* for appellant.

*Wetherbee & Wetherbee* and *William H. Gallagher,* for appellee.

SHARPE, J.     The will of Melita C. Grover, late of Romeo, Michigan, was admitted to probate in Macomb county on March 11, 1914.     Henry J. McKay, of Romeo, and Dr. Arthur W. Condict, of Dover, New Jersey, a nephew of the testatrix, were named as executors and duly qualified.     In March, 1923, McKay, as surviving executor (Dr. Condict being then deceased), filed his supplemental and amended final account, which was allowed by the probate court on April 5th of that year.     An appeal to the circuit court was taken by the Congregational Home Missionary Society, the residuary legatee named in the will.     On trial without a jury, the court disallowed many of the items for which the executor had received credit, and charged him with certain additional items.     Findings of fact and conclusions of law were filed.     Appropriate requests for amended findings and exceptions were duly filed.     The executor here reviews by writ of error the judgment entered on the findings.

When an appeal is taken from the allowance of an executor's account under section 14163, 3 Comp. Laws 1915, it is the duty of the circuit court "to settle the account in controversy."     *Hall* v. *Grovier,* 25 Mich. 428, 438.     On review in this court by writ of error, when the findings of fact and conclusions of law are properly assailed by proposed amendments and exceptions, it is our duty to determine whether the conclusions reached as to the allowance or disallowance of items are supported by the findings, and whether the findings are supported by the evidence.     We must therefore review the disputed items and announce our conclusions relative to them.     *In re Saier's Estate,* 158 Mich. 170, 173.

1. Interest on Deposits.   The executor charged himself with real and personal property on hand and disposed of, and the income thereof received by him, in the sum of $69,443.21.   The probate court surcharged him with $1,303, interest which he should have received on moneys in his hands.   This was increased by the trial court to $2,309.98.   Mr. McKay testified that an average sum of $10,000 belonging to the estate was carried in a commercial, noninterest-bearing account in a bank in Romeo, of which he was a director and cashier, for a period of four and one-half years. The probate court charged him with interest on this amount at three per cent. per annum.   It appeared that the bank paid four per cent. semi-annually on savings deposits.   The finding of the trial court that four per cent. should be charged was amply supported by the proofs.   It was a proper surcharge.   *In re Brewster's Estate,* 113 Mich. 561; *In re Saier's Estate, supra;* 24 C. J. p. 75.

2. Interest on Legacies.   The item "Legacies Paid" in the account included an interest charge of $979.80. This was allowed by the probate judge, but reduced by the trial court to $317.10.   While the order is not in the record, it does appear that one was made on January 26, 1915, for the payment of the specific legacies.   They were not paid until the June following; in fact, that of Dr. Condict was not paid until much later.   The only accounts kept by Mr. McKay of the moneys of the estate in his hands were the entries in the bank books.   We find much difficulty in checking them with the statement of legacies paid in the account.   It does appear that on February 1, 1915, there was on hand in the commercial account $3,231.24, and in the savings account $30,978.69.   The delay in making payment of the legacies is not satisfactorily accounted for.   The finding in this respect is supported by the proof, and should not be disturbed.

3. Attorneys' Fees. The executors had paid the attorneys who acted for them in the settlement of the estate $3,459.88, and asked for an allowance of $500 in addition thereto for preparing the final account and attending at the hearing on same. An itemized statement thereof appears in the record. The attorneys for the residuary legatee insist that the services in most part were rendered in needless and unnecessary litigation, and without express authority from the probate court to engage such services. The probate court allowed the items as presented in the account. The trial court reduced the amount to $250.

There is no statute expressly authorizing an executor to employ an attorney to assist him in administering an estate. Section 14117, 3 Comp. Laws 1915, provides that he shall be allowed "all necessary expenses in the care, management and settlement of the estate." Under this section the probate court may allow the charges of an attorney when one has been employed, and "when necessary services are involved in the settlement of an estate." *In re Quinn's Estate*, 179 Mich. 61. The undisputed facts clearly show the necessity for such employment in this case, and there is no evidence to support the finding of the trial court that $250 is a reasonable allowance for the service so rendered. One of the attorneys for the residuary legatee testified that, in his opinion, formed from an "examination of the files and records of that case and from my knowledge and personal observation of what has been done in the estate," the necessary services rendered were worth from $1,350 to $1,400.

Pending the probate of the will, the executors retained Erskine & Lungerhausen, of Mt. Clemens, as their attorneys. The services rendered by this firm were performed by Judge Erskine until his death in the spring of 1916. The order of probate was made on March 11, 1914. The bill rendered, and as allowed in

probate court, contains charges for services rendered prior to and on that date amounting to $260. We feel constrained to hold that there was no necessity for this employment. *Stover* v. *Wayne Probate Judge,* 219 Mich. 566. The authorities cited and quoted from, approvingly, in that case hold that a person named as executor in a will has no power to act as such until he receives his letters testamentary, and cannot bind the estate by incurring expense incident to the probate of the will. It was, however, noted that "Exceptional cases may arise where such expenses might well be considered for the benefit of the estate." See, also, *In re Doty's Estate,* 231 Mich. 115.

In this case no notice of contest was filed. The order of probate was made on proof of the due execution of the will. A recent statute provides for the employment of counsel, subject to the approval of the judge of probate, when a notice of contest is filed. Act No. 281, Pub. Acts 1923; *Freeman* v. *Wayne Probate Judge,* 230 Mich. 455. These items cannot be allowed.

A claim of $15,000 was presented to the commissioners on claims by Ellen Cargill. It was contested by Judge Erskine on behalf of the executors, but was allowed at $5,500. An appeal was taken and, pending trial, it was settled for $4,000. There was also litigation in the circuit court in what is spoken of as the Tippett case, which required the services of an attorney. This was also attended to by Judge Erskine. There were other minor matters in which he rendered seemingly necessary service.

A suit was brought in the Federal court of Detroit against Dr. Condict, one of the executors, and his legacy in the hands of the executors was garnished. A disclosure was filed for them by Judge Erskine. For this service a fee of $125 was charged. The only duty cast on the executors was to file the disclosure.

No legal questions were involved.    We think an allowance of $25 sufficient therefor.

Some time after the will was admitted to probate, the legality of the bequest to, and the identity of, the residuary legatee were questioned.    The attorneys for the executors filed a bill on July 31, 1915, asking for a construction of the will and that the executors be instructed and directed as to their duties thereunder. The heirs at law as well as the residuary legatee were made parties.    An answer was filed by the residuary legatee, and an answer and cross-bill by the heirs at law, who sought to set aside the order probating the will, on the ground that it had been procured by fraud.    The decree in this case was not entered until October 13, 1922.    Prior to its entry, a settlement was made between the heirs and the residuary legatee. The decree sustained the will, validated the bequest to the residuary legatee, and dismissed the cross-bill of the heirs.    No costs were allowed.

As this suit apparently proceeded to hearing and decree without any claim, or even suggestion, having been made that the executors were not justified in bringing it, we are of the opinion that a reasonable allowance should be made for the necessary services of the attorneys employed by them.

It may well be said that as soon as the executors had brought the residuary legatee and the heirs before the court they had no further interest in the suit. They were in no way concerned as to whether the bequest to the residuary legatee was valid.    But the cross-bill filed by the heirs attacked the validity of the will itself.    The executors had been administering the estate for more than two years, and it was clearly their duty to defend the will and to expend such moneys of the estate in so doing as were reasonably necessary.    *In re King's Estate,* 110 Mich. 203, 206. In doing so, they were supporting the bequest to the

residuary legatee, and it appears that its attorney had frequent conferences with the attorneys for the executors concerning it.

It is exceedingly difficult to attempt to separate the charges made for defending against the attack on the probate of the will from those made in an effort to sustain the residuary clause, in which, as before stated, the executors had no concern.    We find a charge of $100 for "services exam. authorities on construction of will," and one of $50 for "time on answer of Missionary Soc."    These cannot be allowed.    While the attorneys have been paid almost in full for the services rendered, we must consider their bills as if they had been presented to the probate court for allowance.    The executors had no authority to pay them until authorized to do so by the court.    The burden was then cast on them to satisfy the court that the services rendered were necessary in the administration of the estate, and that the charges therefor were reasonable in amount.    The bills as rendered and the proof submitted relative to them afford but scant information on which to reach a fair conclusion as to either of these essentials.    This paucity of proof is no doubt somewhat due to the inability to produce Judge Erskine as a witness.    There is proof as to the entire service rendered and what would be a fair charge therefor.    After a careful examination of the entire record, we are of the opinion that an allowance of $2,000 should be made for all such services rendered, not including, however, the charge for making the final account.    To this will be added the disbursements charged for, amounting to $69.96.

A charge of $500 is made by the attorneys for preparing the final account and attending the hearing on the same in the probate court.    We have no doubt that the attorney had considerable difficulty in its preparation.    This difficulty, however, arose over the

neglect of the executor to keep his accounts in proper shape.   It appears that he had turned over $16,000 to Judge Erskine to pay claims which had been allowed, and the receipts for such payments were miss, ing.   It was surely a part of the ordinary duties of the executor to make payment of these claims himself.   It was also his duty to keep an accurate account of his receipts and disbursements, in which the dates should clearly appear.   Had he done so, there would have been but little difficulty in the preparation of this account.   We feel that no injustice is done to him in reducing this allowance to $100.

4. Extraordinary Services.   In the account as presented, the executor asked the allowance of $1,985.42 for extraordinary services rendered and expenses incurred by his co-executor, Dr. Condict, and the sum of $1,639.92 for himself.   These were allowed by the probate court.   The trial court allowed the claim of Dr. Condict at $141.30, and that of Mr. McKay at $125.

Dr. Condict's claim consisted in part of a charge of $594.50 for the expenses incurred on thirteen trips made by him to Michigan.   The allowance of the trial court was for expenses on three of these trips.   As before stated, he was a nephew of the deceased, a legatee named in her will, and one of her heirs at law. The first trip was made by him at the time of her death.   He accompanied her body to the place where it was buried in New Jersey.   He made claim to expenses $42 and six days' service on this trip.   Counsel make no attempt to justify this charge as an expense or service rendered by him as an executor, but suggest that it "should be treated by the court as an item of funeral expenses."

The trial court found "that at least ten of the trips" charged for "were not made in the interest of said estate."   The burden was on the executor who sought

the allowance therefor to show that they were.    We have read the record relating thereto with care and find no evidence to justify a reversal of this finding. It does appear that the probate judge assured Dr. Condict that his expenses on necessary trips would be allowed.    The doctor was interested in the estate as a legatee.    A creditor sought to reach his legacy by garnishment proceedings.    He was interested as an heir in the cross-bill filed to set aside the probate of the will.    It seems clear that some of the trips made by him were in connection with this litigation. It was for him or his estate to satisfy the court that the expense was incurred in the performance of his duties as executor.    The proofs do not so show, except as to the three trips for which allowance was made. Aside from making these trips, it does not appear that he rendered any extraordinary service as executor. We are impressed that the statutory allowance fully compensated him therefor.

We have read the testimony of Mr. McKay in support of his claim with much care.    He testified that he "must have made at least 50 trips to Mt. Clemens for the purpose of consulting with counsel."    This included "six or eight" trips when the chancery case was heard.    He valued his services "at $25 a day, which was my usual fee, as an attorney."    His compensation as bank cashier was $2,000 per year.    The dates when these trips were made and the occasion therefor were not specifically stated.

No legal obligation rests on any person to act as an executor.    When Mr. McKay accepted the appointment, he obligated himself to discharge the duties thereof faithfully and to the best of his ability, even though such performance might interfere with his private business.    The trial judge found, and we think the record supports the finding, that he did not do so. No claim is made, nor would the record support one,

of any evidence of wrongdoing or want of integrity on his part. But the record does disclose a lack of attention and care which cannot be excused on the part of an executor. He withdrew the moneys of the estate from an interest-bearing account and placed them in a commercial account. He neglected to pay the legacies with reasonable promptness after being ordered to do so by the court. He advanced large sums to his co-executor for expenses and fees, and withdrew considerable sums for his own fees, without an order of the court allowing them. He burdened his attorneys with duties which should have been performed by him. He did not file annual accounts as the statute requires him to do. He neglected to keep proper accounts of his receipts and disbursements so that the state of the account might be readily determined at any time. In view of these delinquencies on his part and the unsatisfactory proof offered as to the nature of the service rendered for which the charge for extraordinary services is made, we are unwilling to say that the discretion of the trial court in the allowance made to him was not fairly exercised.

In the conclusions reached, we have not been unmindful of the long delay in the settlement of this estate. The will was admitted to probate on March 11, 1914, and the final account heard in the probate court on April 5, 1923. While this delay was, in part, due to the illness of the late Judge Tucker, we are impressed that there was not that insistence on speedy action on the part of the executors and their attorneys which the interests of the estate demanded at their hands.

The cause will be remanded to the circuit court, with directions to allow the charges for attorneys' fees at the sum of $2,100, and the disbursement item of $69.96. In all other respects the judgment there

entered is affirmed.    The executor is allowed the cost
of the review in this court, including an attorney fee
of $100, payable out of the estate.

BIRD, C. J., and STEERE, FELLOWS, WIEST, CLARK,
and MCDONALD, JJ., concurred.

Justice MOORE took no part in this decision.